Leach *v.* Marsh.

# COUNTY OF YORK.

NATHANIEL LEACH, *Adm'r, in Error, versus* MARY MARSH.

A judgment recovered on *default*, against a person admitted to have been *non compos mentis* at the time of the proceedings in the case, will be reversed on a writ of error brought by his administrator after his decease.

Actions brought against persons *non compos* for necessaries, *it seems,* constitute an exception; but, in such case, the defendant in error should plead the fact in bar of the suit.

The case of a judgment on *default*, against a person *admitted* to have been *non compos,* is to be distinguished from such cases as *King* v. *Robinson,* 33 Maine, 114, where the fact of unsoundness of mind was not admitted, and the defendant appeared by attorney, and judgment was rendered upon a trial and verdict.

It would be manifestly unjust to render judgment against a party or his estate, when he had no capacity to take care of his own affairs or to employ another to do it.

WRIT OF ERROR.   ON REPORT BY APPLETON, J.

Mary Marsh brought an action against Asa Leach, December 6, 1854; the writ was returned as served by leaving a summons "at the last and usual place of abode" of the defendant, and real estate attached; and, at January term, 1855, the defendant not appearing, a default was entered, and judgment was given for the plaintiff for $344,26, and costs of suit. Execution was issued, and extended by levy on the real estate of Leach.

Asa Leach having deceased, the plaintiff in error, appointed administrator on the estate of the deceased, sued out this writ of error against the said Mary Marsh, September 14, 1857, praying that the former judgment in her favor may be reversed, and assigning the following errors : —

1, 2 and 3.   Want of notice and insufficient service on the deceased.   4. "The said Asa Leach, at the time that the officer's return of service of said writ upon said Asa Leach

Leach *v.* Marsh.

purports to have been made, and for a long time before that date, and from that time until his decease, after the rendition of said judgment, was *non compos mentis*, and incapable of taking care of himself and of managing his business affairs." 5. "No guardian *ad litem* was appointed by the Court for said Asa Leach, he being at that time *non compos mentis*, and having no guardian." 6. The judgment was obtained by collusion and fraud. 7. Asa Leach did not at the time owe Mary Marsh any thing. 8. By the rendition of said judgment, great injustice was done, &c.

. The defendant, in her answer, traversed the first, second, third and sixth assignments of error, but pleaded to the fourth, fifth, seventh and eighth specifications, that there was "no error, either in the record and proceedings aforesaid, or in giving the judgment aforesaid," &c.

It was admitted that Asa Leach was *non compos mentis*, as alleged in the writ of error, and that the plaintiff was duly appointed administrator of said Asa Leach, May 5, 1856.

The depositions of Ezra Fairfield and John B. Fairfield, introduced by the plaintiff, tended to prove that the deceased was *non compos mentis* from about 1851 to his death.

It was agreed that the full Court should render such judgment as the law and facts authorize.

*E. E. Bourne, jr.,* for the plaintiff, argued elaborately the several points presented by the assignment of errors; but the case was decided mainly with reference to the fourth specification.

The question whether a judgment rendered against a person insane or *non compos mentis* at the time of the service of the writ upon him is erroneous has never been raised in this State; but many analogous cases are found in the Reports.

In *Mansfield* v. *Mansfield,* 13 Mass., 412, which was a libel for divorce, the respondent was defaulted; but, on suggestion to the Court that he had become insane, the default was taken off, and further proceedings stayed until a guardian was appointed.

A judgment recovered against a person out of the State, without actual notice, will be reversed on error. *Blanchard* v. *Wildes,* 1 Mass., 341; *Smith* v. *Rice,* 11 Mass., 307; *Thatcher* v. *Miller,* 11 Mass., 413; *same* v. *same,* 13 Mass., 270; *Wilton Manuf. Co.* v. *Woodman,* 32 Maine, 185; *Galusha* v. *Cobleigh,* 13 N. H., 79.

A party having a right to appeal, but, without negligence on his part, unable to avail himself of his right, is entitled to a writ of error. *Monk* v. *Guild,* 3 Met., 373; *Skepwith* v. *Hill,* 2 Mass., 35; *Keen* v. *Turner,* 13 Mass., 265; *Gay* v. *Richardson,* 18 Pick., 418.

Other grounds of reversal of judgment on account of incapacity to defend, are the death of one of the parties after suit commenced, the infancy of a party having no guardian, or coverture of a party without the joinder of the husband. 2 Tidd's Practice, 1033; 3 Black. Com., 406, note 4; *Smith* v. *Rhodes,* 29 Maine, 360.

These authorities are based on the ground that the defendant has been barred of the opportunity to make a defence, either from want of notice or incapacity to defend. Do not the same reasons apply with equal force to the case of a person *non compos mentis?* *Mitchell* v. *Kingman,* 5 Pick., 434.

The Court in this State, although the question has not been distinctly decided, has repeatedly intimated that *error* is the proper remedy in the case of a judgment recovered against a person so incapacitated. *Smith* v. *Rhodes,* before cited; *McArthur* v. *Starret,* 43 Maine, 435.

In the case of *King* v. *Robinson,* 33 Maine, 114, relied upon by the defendant in error, although King was *non compos,* and no guardian was or had been appointed for him, yet he appeared by attorney, a hearing was had, and a *verdict* was rendered against him. The Court decided that, as he was represented in Court by his attorney, the judgment ought not to be reversed. King had counsel, and his counsel did not request the appointment of a guardian. The Court, therefore, decided against him. The decision is not a precedent for a case so unlike as the case at bar.

It is true there are incidental remarks, in the opinion delivered by C. J. SHEPLEY, which were not called for by the case, nor sustained by the authorities cited, some of which, however, are English cases decided on extremely arbitrary and anti-republican principles, and others are New York cases based on the old English authorities.

In a case of this kind, a writ of error is the most efficient and direct, as well as the least expensive process to obtain justice. *Arnold* v. *Tourtellot*, 13 Pick., 172; *Hart* v. *Huckins*, 5 Mass., 260; *Blanchard* v. *Wilde*, 1 Mass., 341; *Wilton Manufacturing Co.* v. *Butler*, 34 Maine, 431.

*Goodwin* and *Fales*, for the defendant in error, after arguing the 1st, 2d, 3d, 6th, 7th and 8th specifications of error, contended, with regard to the 4th and 5th, that the mere fact that a party defendant was *non compos mentis* is no error. It has never been decided that proceedings may not be instituted, and prosecuted to final judgment, against a person who has become *non compos*. *King* v. *Robinson*, 33 Maine, 114.

The 5th specification is void for uncertainty. Even brief statements must contain specifications stated with certainty and precision to a *common intent*. *Washburne* v. *Mosely*, 22 Maine, 160; *Nelson* v. *Swan*, 13 Johns., 483; 1 Chitty's Pleadings, 398; *Eustis* v. *Kidder*, 26 Maine, 97.

The counsel for the plaintiff allege a distinction between this case and that of *King* v. *Robinson*, on the ground that in that case there was an appearance by attorney, and a trial, whereas here there was a default. Yet he has not assigned that fact for error. The defendant was duly notified of the pendency of the suit, and failed to appear. The Court entered a default, pursuant to the statute, c. 82, § 2.

If by such default injustice was done to the defendant, he can on petition have a review; but there can be no *error* in following the provisions of the statute.

The mere fact that a defendant is *non compos mentis*, at the service of the process or when judgment is rendered, is

no defence; for, at law and in equity, a contract or liability assumed by him while of sound mind may be enforced against him when he is of unsound mind. *King* v. *Robinson*, before cited; *Hix* v. *Whitmore*, 4 Met., 545; *White* v. *Palmer*, 4 Mass., 147; *Hathaway* v. *Clark*, 5 Pick., 490.

The opinion of the Court was drawn up by

GOODENOW, J. — This is a writ of error, dated September 14, 1857, to reverse a judgment rendered by this Court on the 25th day of January, 1855, *on default*, against the plaintiff's intestate. The officer returned an attachment of real estate, and that he made service on the defendant "by leaving a summons at his last and usual place of abode," &c.

The *fourth error* assigned is, that — "The said Asa Leach, at the time that the officer's return of service of said writ upon said Asa Leach purports to have been made, and for a long time before that date, and from that time until his decease after the rendition of said judgment, was *non compos mentis*, and incapable of taking care of himself, and of managing his business affairs." To this assignment of error, the defendant pleads "*in nullo est erratum*," which plea is a confession of all errors in facts which are well assigned. The depositions in the case prove the fact, and it is expressly admitted, that the plaintiff's intestate at the times when, &c., was *non compos mentis*, as alleged in the writ. Is this such an error as requires us to reverse the judgment? It is a fundamental principle, in all good governments, that no man shall be condemned, civilly or criminally, without first having had an opportunity to be heard in his defence. Saint Paul was exceedingly happy to have an opportunity to answer for himself, touching the things whereof he was accused by the Jews, and it would have been a great loss to the world if he had been deprived of it.

This is an error not appearing on the face of the record. It is an error of *fact*, if error it is.

"But a reversal may take place for errors of fact, as when the defendant was a maniac, or *non compos mentis*, being legally

Leach *v.* Marsh.

incapable of making a defence, or when he was absent from the State, and had no actual notice of the suit, and was defaulted and judgment rendered at the first term, without a continuance as the statute requires." *Smith* v. *Rhodes*, 29 Maine, 361, and cases there cited.

In *Mitchell & al.* v. *Kingman*, 5 Pick., 431, it was held that a person may plead that he was *non compos mentis*, or show it in evidence under the general issue, in avoidance of his contract. In *Seaver* v. *Phelps*, 11 Pick., 304, the doctrine of the above case has been again declared to be sound; and the established law of Massachusetts, notwithstanding some recent decisions in England, which seem to hold a different doctrine. In *Grant* v. *Thompson*, 4 Conn., 204, the defence of insanity was admitted to an action on a promissory note.

In *Seaver* v. *Phelps*, WILDE, J., says,—" It is sometimes difficult to determine what constitutes insanity, and to distinguish between that and great weakness of understanding. The boundary between them may be very narrow, and, in fact, often is, although the legal consequences and provisions attached to the one and the other respectively are widely different. In the present case, however, this point is settled by the verdict, and no question is made respecting it." The same point is settled in the case at bar. The fairness of the defendant's conduct, if fair it was, cannot supply the want of capacity in the plaintiff's intestate.

While the courts have power to protect the property of a defendant who is temporarily absent from the State, against a suit of which he has not had notice, if they have no power to protect the property of an insane man against a suit when there has been no hearing, and no opportunity for a hearing, and no notice to a responsible party of the existence of the suit, it is to be regretted, to be lamented. It is said this specification is insufficient, that the original defendant was " *non compos mentis*" at the time when, &c. When the insanity is once established, or admitted to have existed, the fact

carries all the other necessary consequences along with it. It follows that there has been no hearing; no legal party.

In *King* v. *Robinson*, 33 Maine, 123, the late C. J. SHEP-LEY says,—" The law does not appear to have imposed it as a duty to be performed by the plaintiff to ascertain the mental capacity of the defendant, and to bring it before the Court for its consideration, that such a guardian" (*ad litem*) "may be appointed." But with all due respect, it seems to us that reason and justice and safety do impose such a duty upon the plaintiff in a case like the present. In 1 Mass., 341, SEDGWICK, J., says,—"Although the Court cannot know the fact," (of absence from the State,) "otherwise than by suggestion entered on the record, yet, if the plaintiff will take judgment, he does it at his peril. It was his duty to make the suggestion, and, in practice, it was always made, if made at all, under the former statute, *by the plaintiff;* for who else could make it? Not the defendant surely; for he is supposed to be wholly ignorant of the existence of the suit." Again, "the statute is against the common law, (by which personal notice is always necessary,) and, therefore, ought to be construed strictly. And it is of very great importance that judgments rendered against persons, who have not, in fact, had notice, should not be binding, unless the Court, from the positive provisions of the statute, are bound to say they are." DANA, C. J., says,—"But who is to make the suggestion? The plaintiff, undoubtedly, and if he will take a judgment, he does it at his peril." If a plaintiff will take judgment against a man hopelessly insane, without a suggestion of the insanity to the Court, or notice to guardian or next friend, must he not do it at his peril?

Can he thus carve for himself, without regard to the rights of others?

In commenting upon the case of *White* v. *Palmer*, 4 Mass., 147, Mr. Justice SHEPLEY says, "the error assigned was, that the original defendant was *non compos mentis*, and that White and Hall, long before the *teste* of the writ, had been legally

appointed guardians, and that they had no notice of the suit. The judgment was reversed for that cause, but the case *does not* decide that the judgment would not have been legal, if the *non compos* had not been under guardianship." Upon this hypothesis, it would seem that the judgment was reversed because there had not been due courtesy exercised toward the guardians, not on account of a wrong and injury done to the *non compos*, and to his estate.

In *Seaver* v. *Phelps*, before cited, WILDE, J., says, — " The general doctrine, that the contracts and other acts *in pais*, of idiots and insane persons, are not binding in law or equity, is not denied. Being bereft of reason and understanding, they are considered incapable of consenting to a contract, or of doing any other valid act."

Actions may have been maintained against persons *non compos* for necessaries, as in *Bagster & al.* v. *The Earl of Portsmouth*, 5 Barn. & Cres., 172, and *Thompson* v. *Leach*, 3 Wend., 310. But this is an exception, and not the general rule. " If, then, idiots and insane persons are liable on their contracts for necessaries, they are certainly entitled to as much protection as infants. It matters not, however, how this may be, since the contract in question is not one for necessaries." 11 Pick., 307. If the contract in this case had been for necessaries, and that had been a legal answer, the defendant in error should have pleaded the fact in bar of the writ.

" The Court will generally allow the defendant in error to come in and plead that the said judgment is not erroneous, in any matter of fact, in manner and form, &c., and tender an issue to the country. With this plea, he may be required to file a specification, setting forth, in addition to a denial of the fact assigned for error, any other matter of fact in avoidance, on which he relies, tending to show that the judgment ought not to be reversed." 6 Met., 489.

It was held in *Lamprey* v. *Nudd*, 9 Foster, 303, that the fact, that a person against whom a suit was commenced was, at the time of the service of the process upon him, a person

of insane mind, and that he so continued until the time of the rendition of judgment, even if he appeared in person, or by attorney, *or not at all*, was good cause for reversing the judgment on error.

The case of *King* v. *Robinson*, seems to be relied upon by the defendant in error as decisive of this case. In that case, there was an appearance by attorney. In that case, it was not admitted, as it is in this, that the plaintiff in error was, at the time when, &c., actually *non compos*. While that question was suspended in doubt in the mind of the Judge, it would be a question addressed to his discretion, whether a guardian *ad litem* should or should not be appointed. But when it is once incontestably settled in the affirmative, it would be manifestly against first principles, for the Court to proceed to render judgment against a man or his estate, when he had no capacity to take care of himself or to employ some other person to do so.

In *Hix* v. *Whittemore*, 4 Met., 545, the error assigned was that, at the time of the service of the said original writ, and at the time of the rendition of said judgment, the plaintiff in error was insane; and an issue was made to the jury. There was no intimation from the Court or counsel that the assignment was insufficient, if founded in fact.

The verdict was for the plaintiff in error, and was set aside on exceptions, on account of the supposed misdirection of the Judge as to the burden of proof, or as to the presumption of the continuance of the insanity, when once proved to have existed.

It becomes unnecessary to discuss the questions arising out of the other assignments of error; as we regard the *fourth error* assigned sufficient in law, and proved and admitted in fact.               *Judgment reversed.*

APPLETON, CUTTING and DAVIS, JJ., dissented.