# CHARLESTON.

<div style="float:right">30 | 598<br>39 | 481</div>

## STATE *v.* BURKEHOLDER.

Submitted January 16, 1888.—Decided January 28, 1888.

1. STATE—ACTION BY—FRAUDULENT CONVEYANCE—LIEN.

   The State has the same right as one of its citizens to maintain a suit in equity to set aside a fraudulent conveyance, and subject the land of the defendant to its demands.   (p. 598.)

2. STATE—FRAUDULENT CONVEYANCE—LIEN.

   It can maintain such suit to set aside a fraudulent conveyance and subject the land of the defendant to the payment of a judgment for a fine recovered against the defendant for the unlawful sale of spirituous and other liquors.   (p. 598-9.)

3. RETAILING LIQUORS—FRAUDULENT CONVEYANCE.

   If a party engaged in the unlawful retailing of ardent spirits conveys away his land with the intent to prevent the State from subjecting it to the payment of any future fines for such unlawful retailing, such deed is fraudulent, although the sales on which fines were subsequently recovered had not then been made.   (p. 598, 599.)

*Alfred Caldwell, Attorney-General,* for the State.

No appearance for appellee.

JOHNSON, PRESIDENT:

The State in 1886, filed a bill in the Circuit Court of Mercer county to enforce its judgments for fines and costs, amounting to about $150.00, against the defendants by subjecting to the lien of its judgments a certain tract of land which the defendant, George Burkeholder, had before the recovery conveyed for a nominal consideration to his wife, Annie B. Burkeholder. The bill alleged the recovery of the judgments for fines and costs on five several indictments against the said George Burkeholder for a violation of law against the sale of spirituous liquor without license. The bill further alleges that said Burkeholder purchased two lots in the town of Bramwell for which he paid all the purchase-money, and took a deed• to himself, which is ex-

hibited with the bill, and is dated February 25, 1886, and acknowledged on the same day, but not admitted to record until the 5th day of August, 1885; that shortly afterwards he conveyed the lots to his wife, Annie Burkeholder, together with certain personal property.

The bill charges that "while the defendant, George Burkeholder, was selling spirituous liquors contrary to the law of West Virginia, and in anticipation of the fact that the above judgment would be recovered against him for selling contrary to law, said George Burkeholder, with the object and intent to prevent your complainant from recovering anything on account of said illegal sale of spirituous liquor, conveyed or attempted to convey the two lots of land above, referred to to his wife, Annie B. Burkeholder, and upon which there are two good houses built by the said George Burkeholder and paid for by him since the attempted conveyance to his wife, Annie B. Burkeholder. The plaintiff alleges and charges that no consideration whatever passed from said Annie B. Burkeholder to the said George Burkeholder for the said deed; that the same was made to hinder, delay, and defraud the plaintiff," etc.

The prayer of the bill is that said deed be declared fraudulent and void as to plaintiff's judgments, and that said lots be sold to satisfy said judgments.

Copies of the deed, indictment, and judgments are exhibited with the bill. The indictments filed as exhibits allege four of the sales of liquor to have been made in October, 1885, and one in December, 1884. The exhibits further show that on the 21st day of November, 1885, the defendant appeared and confessed judgment in each of said five indict- ments for $10.00 fine and costs.

An amended bill was filed, alleging that said lots had been sold to J. A. Welch, O. J. Skeggs, and ———— Reynolds,—No. 14 to Welch and Reynolds and one half of lot No. 2 to O. J. Skeggs; that said sales had been made since the institution of the suit and the docketing of *lis pendens;* that the sale was made to Welch with full knowledge that the lot belonged to Burkeholder, and was liable to the satisfaction of the judgments; that said Welch held back about $130.00 of the purchase-money for the purpose of paying

said judgments, which he has several times attempted to do by compromising for a less sum than the face of the judgments; that Skeggs also had knowledge of the fraud when he purchased; that on the 15th day of November, 1886, the State recovered judgment for fine of $10.00 and costs, and on the 27th of November, 1886, a fine of $25.00 and costs, and prayed for the subjecting of said property to the payment of its judgment, etc.

The defendants, George and Annie Burkeholder, demurred to the original and amended bills on the grounds, (1) that there is no equity in the bill; (2) that the State of West Virginia has no right or authority to institute this suit upon the supposed grounds set out in the bills; (3) that the Circuit Court has no jurisdiction of this cause; (4) that the prosecuting attorney has no authority under the law to institute and prosecute this suit. The other defendants demurred on the same grounds. The cause was heard on the demurrer on the 14th day of March, 1887, and the Court sustained the demurrer and dismissed the bills.

From this decree the State appealed. The appellees have not filed any briefs, nor have they appeared in this Court. The Attorney-General has filed a brief to show the court erred in dismissing the bills. We cannot say on what grounds the court based its action.

The first question presented is, can a judgment in the name of the State, for a fine, be enforced in a court of equity like the judgment of one individual against another, by subjecting the land of the defendant to the payment thereof? Section 9 of chapter 36 of the Code provides: "It shall be the duty of the prosecuting attorney of every county to institute and prosecute in the Circuit Court of his county proper proceedings for the recovery of all fines imposed by law, where the cases are cognizable in such court." The tenth and eleventh sections provide for a *capias pro fine* and a writ of *fieri facias* as means for collection of fine; and by section 5 and following sections of chapter 35 of the Code, it is provided that such *fieri facias* may be levied on the real estate of the defendant, and if there are no goods and chattels the real estate may be sold under such writ to pay the fines.

It was not necessary to inquire here whether the State would be confined to the remedy pointed out by the statute, or whether it could like any citizen at its option institute in every case, whether necessary or not, a chancery suit to subject the real estate of the defendant to the satisfaction of its judgment. Where the title of the real estate appears in the name of the defendant, the most expeditious mode for the State would certainly be to pursue the remedy pointed out by the statute, and sell under a *fieri facias*. But here that could not be done, because the legal title is not in the defendant, but in others; charged in the bill to have been transferred in fraud of the claim of the State. Here the State is remediless, unless it can appeal to the courts to set aside the fraudulent conveyance, and subject the property to the payment of its judgments.

· It is clear that the charge of fraud in the bill is quite sufficient if the State can maintain such a suit. Why can it not do so? I do not remember that the question has ever been decided in Virginia or here. No case is cited. Our statute against fraudulent conveyances (chapter 74 of the Code) is substantially the same as the English statute of 13 & 27 Eliz. united in one. 4 Lomax Dig. 418; *Lockhard* v. *Beckley*, 10 W. Va. 97. The words " creditors, purchasers, or other persons," make our statute equally broad with the English statute. The English decisions on the question before us are therefore pertinent. The vice-chancellor, Wigram, in *Perkins* v. *Bradley*, 1 Hare, 219, 23 Eng. ch. 228, said that he assented to the argument that " a colorable alienation of goods by a person under charge of felony for the ·purpose of avoiding a forfeiture would ·be fraudulent and void as against the crown." In *Shaw* v. *Bran*, 1 Starke 319, 2 E. C. L. 319, it was held that a deed by which a felon on the eve of his trial for a capital offence assigns his property to another cannot be supported without proof of consideration. Lord Ellenborough in that case said: " I am of opinion that this deed, executed as it was by the party on the eve of his trial for a capital offence, of which he was afterwards convicted, cannot be supported without proof of the consideration. If there had been a good considera-

tion, the assignment would have been valid, although the object was to avoid a forfeiture."

In *Morewood* v. *Wilkies*, 6 Car. & P. 144, 25 E. C. L. 363, it was held that if A., being in custody on a charge of felony, convey all his property in trust for his wife for life, and then in trust for his son, and on the next day A. is convicted of the felony, that such conveyance would be void as against the crown.

In *Duke of Bedford* v. *Coke*, 2 Ves. Sr. 115, Lord Chancellor Hardwicke said: "The crown certainly might have two kinds of equity or defence against such a demand as this: *First.* Supposing the grant of annuity by fraud or imposition from A., the crown coming in on foot of the attainder, and having all rights vested in A. by his forfeiture, might have taken advantage of the fraud; and though it was by conveyance which would have affected his estate in the hands of the crown, would have the same equity to be relieved against it, and so might Lady Jane Coke in the place of the crown. But the crown might have another equity which A. could not; viz., if A. had voluntarily and designedly made such a grant to incumber his estate in the hands of the crown, with a view of his high treason, the crown and Lady Jane Coke would have a right to dispute that demand, and be delivered therefrom as fraudulent."

In *State* v. *Fife*, 2 Bailey 337, it appeared that James Fife had been prosecuted for two distinct acts of trading with slaves, and on the 1st of June, 1827, entered into recognizance to appear and answer to said prosecution. On the 5th of June, 1827, he confessed judgment to the present defendant, Samuel Fife, for $322.00 debt, besides interest and costs, and an execution upon the judgment was immediately sued out. James Fife was subsequently indicted for the offences for which he had been recognized, and at the spring term, 1829, was convicted and sentenced to pay a fine to the State of $200.00 in each case. Executions were sued out for the collection of these fines. The execution of the defendant was older, but it was contested for the State that the judgment was fraudulent and confessed to evade the fine which might be imposed on James Fife for the said offences, and therefore void. Much testimony was introduced relative

to the fairness of defendant's judgment. The presiding judge charged the jury " that if they believed that the judgment had been confessed, with a view to avoid the payment of the fine afterwards imposed on James Fife, it was sufficient to authorize them to declare it void." The jury found for the State, and the defendant moved to set aside the verdict, and for a new trial. Harper, J., said : " No exception is taken to the form of the proceeding. The ground chiefly relied on is that James Fife was not indebted at the time of confessing the judgment to the defendant; and that the case does not come within the decisions which have been made upon the statute of Elizabeth, ch. 5. We think, however, that the jury might very well have concluded that it was confessed with a view to a future debt, and, if the judgment was fraudulently confessed, it was void independently of the statute. of Elizabeth."

We have cited enough authority to show that an individual can no more be permitted to defraud the State in a conveyance than he can a person; that where a person conveys his property with intent to defraud his creditors, and the State is one of those creditors, both reason and authority show that the State can maintain a suit to have that conveyance declared fraudulent as to its claim, in the same manner and with like effect as an individual creditor can. It would be strange indeed, and a reproach to the administration of justice, if the State in such a case would have less rights and less power to procure what is justly due it than one of its citizens in a like situation ; that if a citizen were defrauded the courts were open to him for redress, but the State might with impunity be defrauded out of its just claims. The State, then, under the circumstances, had the same right to mantain a suit to set aside the fraudulent conveyance as a citizen would have had if he had recovered a judgment against the defendant, George Burkeholder.

There can be no doubt, if the allegations of the original and amended bills are true, and on demurrer they must be so regarded, that the conveyance was made to delay, hinder, and defraud the State. It is distinctly charged in the original bill that the conveyance was made with intent to prevent the State from enforcing any fines which might be

imposed for it against the defendant for the unlawful sale of spirituous liquor.  It matters not if this charge be true, that the illegal sales for which the judgments were afterwards recovered, had not been made at the time the conveyance was made, if as is charged, the conveyance was made to prevent the State from enforcing judgments for fines to be imposed thereafter on sales thereafter to be made, because it is the intent with which the sale of land is made that controls the character of the conveyance.  This Court held in *Lockhard* v. *Beckley*, 10 W. Va. 87, that if it be shown that there was *mala fides* or fraud in fact in the transaction, whether the actual fraudulent intent relates to existing creditors or is directed exclusively against subsequent creditors, the effect is precisely the same, and subsequent creditors may, upon the strength of such fraud, successfully impeach the conveyance.  The State here is a subsequent creditor, and if the intent in the grantor at the time of the conveyance was to hinder, delay, or defraud the State, as to such future demands it might have against him, the deed is fraudulent.

The deed is reversed, and the cause remanded for further proceedings.

REVERSED.  REMANDED.