# CHARLESTON,

## GILL *v.* STATE.

Submitted June 12, 1894.—Decided Nov. 17, 1894.

1. FIERI FACIAS—FINE—MISDEMEANORS.
   A writ of *Fieri Facias* upon a judgment of a Circuit Court for a fine against a person convicted of a misdemeanor ought to run against goods and chattels and real estate.

2. FIERI FACIAS—FINE—MISDEMEANOR—MARRIED WOMAN.
   Such execution against a married woman may be levied upon her separate estate, personal or real.

3. HUSBAND AND WIFE.
   Torts by wife; liability of husband and wife discussed.

JOHN BASSEL for plaintiff in error cited Code c. 35, s. 5 ; Id. c. 42, s. 48 ; 30 W. Va. 595 ; Code, c. 36, s. 3, 4 ; Code, (1849) c. 42; Code, c. 36, s. 9, 10, 12; 29 W. Va. 385.

Attorney-General T. S. RILEY for the State cited Code c, 35 ; 30 W. Va. 593, 596 ; Code, c. 36, s. 12.

BRANNON, PRESIDENT :

Eleven writs of *fieri facias* were issued from the Circuit Court of Harrison county in favor of the State against Mrs. Thomas Gill upon judgments against her for fines imposed for misdemeanors ; and she made a motion to quash the same and levies of them, which being overruled, she has brought the case here.

Her ground for quashing the writs of *fieri facias* is, that upon their face they require the fines and costs to be levied

of the goods, chattels and real estate, and she says that an execution for a fine can not be levied out of real estate. Is this so? At common-law an execution for a debt or liability of a private person to another could not be levied of realty, but one in favor of the King or state could be. Opinion in *Leake* v. *Ferguson*, 2 Gratt. 434; Freem. Ex'ns, § 172; *Jones* v. *Jones*, 18 Am. Dec. 327. Our Code, in chapter 35, s. 5, expressly enacts or continues this common-law prerogative of the state by providing, that " in a writ of *fieri facias* upon a judgment or decree against any person indebted or liable to the state " the command shall be to levy the money out of the " goods, chattels and real estate " of the defendant.

It is contended that this provision applies, not to fines imposed for criminal or penal offences, but to debts or some mere money liability; that it is found in a chapter of the Code, whose very title imports such debt or money liability, not money penalty imposed for crime, the title of the chapter being " Of the Recovery of Claims Due the State; " and that the chapter provides motions and actions as means of recovery of the claims here meant, " processes " not meaning the recovery of fines by indictment; and that the words in section 5, " indebted or liable to the state," must be given the same meaning as in section 3, which provides, that " the action or motion at law may be against any person indebted or liable in any way whatever to the state."

These considerations have force, but they are not conclusive and are outweighed by others. In the first place, section 5, c. 35, is to be liberally construed, because it is purely a remedial enactment giving process of execution to enforce judgments for money in favor of the public, and as its purpose is to realize public dues it should not be given a narrow technical application. Its broad language is, that a writ of *fieri facias* " upon a judgment or decree against any person indebted or liable to the state " shall run against real as well as personal estate. Its use of the words, " person indebted or liable to the state," would include, not only a simple debt, but also any money liability existing by judgment, no matter on what the judgment is based. When the prosecution for a public offence has ended in a

judgment imposing a fine, it is no longer an unascertained penalty or liability, but has become fixed in amount and has become a debt and that of the highest character—a debt of record payable *instanter*—and the lawful process of execution may go upon it at common-law and under our statute. *Rex* v. *Woolf*, 1 Chit. 401; 18 E. C. L. 225, 229, 230; *Kane* v. *People*, 8 Wend. 203; 1 Bish. Cr. Proc. § 1304; Code, c. 36, s. 12.

The position taken above—that a judgment for a fine is a debt—is not only supported by cases just cited, but our case of *State* v. *Burkeholder*, 30 W. Va. 593 (5 S. E. Rep. 439) supports it, as it holds the state under its claim to a fine to be a creditor, and the demand such a debt as will authorize the state to appeal to a court of equity to avoid a deed to the prejudice of the state as to its fine. Award of execution is not an integral part of a judgment, as it need not contain it, and such execution as the law points out may issue upon it; and the well-considered cases, cited above, of *Rex* v. *Woolf* and *Kane* v. *People* hold that by common-law on a judgment for a fine a writ of *capias ad satisfaciendum* to take the body, or of *levari facias* to take the goods and the issues of the whole land of the defendant, could be issued just the same as on a judgment for a debt; and it seems to me that our legislation does not intend to deprive the state of the right given by the common-law to go against the land and so delay its steps in collection of money due the public treasury by compelling it to resort to chancery to enforce its recovery.

A large fine is just as much a debt and just as essential to the treasury's needs as a debt against a defaulting sheriff. Why withhold from the state an efficient remedial process in the one case and grant it in the other? Such a judgment for a fine being a fixed debt and liability, it falls under the wide letter of section 5, and, as I have shown, it falls within what must be considered its spirit and remedial purpose. From the mere circumstance that section 2 of chapter 35 provides, that claims due the state may be recovered by motion or action, and that section 3 says that it may be against " any person indebted or liable " to the state, we are not bound to conclude, that, as the words

"indebted or liable" are found in both sections, we must give them exactly the same construction for all purposes and restrain the beneficial operation of the section to not giving execution, but defining what property shall be liable to recoveries by action or motion, and excluding recoveries by indictment. We must look at all the statutory provisions, and the objects they contemplate. Chapter 35 of the Code treats of the recovery of claims due the state, while chapter 36 treats of the mode of recovering fines, but they both relate to the recovery of moneys due to the state. We may say that when chapter 35 says that claims due the state may be recovered by action or motion, it means in respect to the process of recovery of judgment, claims other than for fines, and that when chapter 36, says that where fines are imposed by law, they may be recovered by indictment or presentment and warrants before justices, it means fines not other claims. But these provisions relate in terms to the form of proceeding, and I suppose only those forms can be used, because the language is express; but as to fines section 12, c. 36 authorizes a *fieri facias* to issue without saying what property it shall run against. Does it run against land? We turn to section 5 of chapter 35, and find, that it commands, that a writ of *fieri facias* upon a judgment against any person indebted or liable to the state shall run against land. The two sections afford a remedy for gathering the fruits of the same thing—a recovery by judgment by the state; and as one simply gives a *fieri facias* without limiting it to goods and chattels, and the other makes a state's execution run against goods and lands, we do not make the sections clash by saying that an execution for a fine shall operate upon land, since there would be no inconsistency between them, as they are to be construed together as *in pari materia*, both relating to remedy by execution on state recoveries.

The argument is made by counsel, that, if we allow executions for fines to operate upon lands, then, as some fines are recoverable before justices, land may be sold under executions issued by justices. This is not so; for section 5 of chapter 36 enacts, that proceedings before justices for fines shall conform to sections 219 to 230 inclusive of chapter

50 ; and we find that one of those sections (227) limits the collection of such justices' executions to personal estate. This, so far as it does go, goes to support the position taken in this opinion, that an execution for a fine runs against land, because it imports that the law-makers, when limiting a justices' execution for a fine to personal property, thought that without such limitation it would bind land.

The law allows a state's execution to be levied on land only in default of the defendant's having personalty. If he has not personalty, must he be allowed to avoid payment of fine, though he has land? It may be said every execution for a petty amount might be enforced against land. So might a chancery suit be brought for a petty amount to sell land, since, I suppose, no one would deny, that a judgment for a fine is a lien on land under section 5, c. 139, and the state has like remedy to enforce it as individuals. *State* v. *Burkeholder, supra; Com.* v. *Ford,* 29 Gratt. 683.

In the opinion in *State* v. *Burkeholder,* Judge JOHNSON pointedly expresses the opinion, that under section 5, c. 35 an execution for a fine runs against land, and under it land can be sold. This is said to be an *obiter dictum.* It was germane to the discussion of the subject before the court, if not in point, and, I think, expresses the correct construction of the statute. So we conclude that a state's *fieri facias* for a fine ought to run against goods and chattels and land, and therefore the fact, that those involved in this case did so, is no ground for quashing them.

Another ground relied upon for quashing the levies made under these executions is, that they are upon real estate, which is the separate property of a married woman; and it is contended, that an execution can not be levied on the separate estate of a married woman.

A judgment at law against a married woman upon a contract made during coverture is void. *White* v. *Manufacturing Co.,* 29 W. Va. 385 (1 S. E. Rep. 572). But these judgments are for fines for public offences, not on contract. We are not considering the question of the married woman's liability for the offences, as that was a matter to be raised before the judgment, but only whether her property

can be taken to pay the judgments. Simple as this question seems, it is not without diffculty of decision. No authority bearing on it is cited; and I have found little pointed authority upon it. We can find everywhere authority upon the question of when and how a married woman is answerable for torts and crimes; when the husband is alone liable for her acts; when they are jointly liable; when she is separately liable—but not much exactly on the question whether her separate estate can be taken for fines against her. One would hastily say, that, if a judgment can be rendered against her, execution can be levied upon her estate. We are not here considering how far contracts bind her estate. For her torts I understand the common-law rule to prevail in this state—that the husband is liable for them. If he is present, he is liable for her tort, though he protest against it. If he is absent and knows nothing of it, he is liable to satisfy her torts. There is a case in Illinois holding that the acts enabling married women to take and hold separate estate impliedly repealed the common-law rule making a husband liable for the torts of the wife done by her without his consent or in his absence without his instigation; but the court was nearly evenly divided. See *Martin* v. *Robson*, 65 Ill. 129. In *Norris* v. *Corkill*, 32 Kan. 409 (4 Pac. 862) it is also so held. Mr. Freeman, in note to *Brazil* v. *Moran*, 83 Am. Dec. 777, seems to see it likewise.

This opinion is based on the theory, that at common-law by marriage the husband became in short entitled to all his wife's personalty and her earnings and the rents and profits of her realty during coverture, and was clothed with power to restrain and direct her conduct even by personal chastisement, and therefore it was reasonable he should be responsible for her wrongful conduct; but as since the statutes touching her separate estate and earnings, he gets nothing of her estate by marriage and his right of chastisement is gone in these more civilized and polite times and he is not entitled to her earnings, the whole reason for the rule ceases, and so too ought the rule itself to cease under the maxim of law "*Cessante ratione cessat et ipsa lex*" (the reason ceasing the

law itself ceases) and thus these statutes repeal or abrogate the common-law rule by implication. But this is nothing but judicial repeal—a dangerous road in so important a matter for courts to travel. If there ever was reason for the rule, much of it yet continues. The husband still outside of the property rights has a potential influence over the wife. His counsel may restrain her from wrong, his counsel may instigate her to it. He might encourage her to the grossest wrong against others secretly, and it would be utterly out of the power of the victim of her wrong to prove his agency in it. We may say that his moral influence over her, his capacity through her to injure others with impunity was an element that entered into the adoption of the common-law rule somewhat or largely, and it yet exists. So the unity of person is not entirely gone· She could not contract generally. The rule did not arise solely from the consideration, that by marriage he was invested with her property rights. And so it seems that not all the reasons suggesting the rule are gone. Courts do not favor repeals of settled principles by mere implication. The New York, Pennsylvania and Iowa courts have held, that these married women's acts do not change the common-law rule of the husband's liability for the wife's torts. *Baum* v. *Mullen*, 47 N. Y. 577 ; *Mangan* v. *Peck*, 111 N. Y. 401 (18 N. E. Rep. 617) ; *Fitzgerald* v. *Quann*, 109 N. Y. 441 ; *Quick* v. *Miller*, 103 Pa. St. 67 ; *McElfresh* v. *Kirkendall*, 36 Iowa 228; Wells, Sep. Prop. 560 ; 1 Bish. Mar. Wom. § 909. Thus it seems that sufficient reason exists against uniting in such judicial repeal. But as remarked in *Withrow* v. *Smithson*, 37 W. Va. 761 (17 S. E. Rep. 316) and by Mr. Bishop in his work on Married Women (volume 1, § 909) this liabity of the husband is unjust and ought to be repealed.

As the husband is liable for the wife's torts committed before and during coverture, it might be inferred that she is not liable ; but that is not so. If her tort is committed in his presence and by his coercion, he alone, not she, is liable ; and where he is present, such coercion is presumed, until it appear that he objected, or she acted from her own impulse as the more active party, and then both are liable.

If the act be done not in his presence, both are liable, no matter whether he did or did not instigate it; and where she is liable, both are sued jointly, and judgment goes against both. 1 Minor, Inst. 345; *Roadcap* v. *Sipe*, 6 Gratt. 213; *Com.* v. *Neal*, 10 Mass. 152 (6 Am. Dec. 105) and full note; *Manufacturing Co.* v. *Heil*, 115 Pa. St. 487 (8 Atl. 616, 2 Am. St. Rep. 575, and full note); *Appeal of Franklin's Adm'r* (Pa. Sup.) 6 Atl. 70; *Brazil* v. *Moran*, 83 Am. Dec. 773, and full note; 2 Kent. Comm. 149; Schouler Husb. & W. § 134; Schouler, Dom. Rel. 103; 1 Bish. Mar. Wom. §§ 43, 905; 2 Tuck. Bl. Comm. If he die before suit, she remains liable to suit alone. If he die before judgment pending suit, she remains liable. 2 Bish. Mar. Wom. § 254. It is even said, he may be acquitted and she found guilty. Opinion in *Roadcap* v. *Sipe*, 6 Gratt. 213; 1 Minor, Inst. 346. Thus she is liable to judgment. How is it to be paid? Take a judgment against husband and wife for tort, she owning land, before the separate estate act, in which he has a life-estate and she the reversion in fee. Surely the whole fee including her reversion would be liable. Otherwise the judgment would be vain as to her. 1 Bish. Mar. Wom. § 908; *Fox* v. *Hatch*, 14 Vt. 340; *Moore* v. *Richardson*, 37 Me. 438. But is her separate estate liable to such civil judgment for tort? It must be so, else all the law just stated, which asserts her liability for tort, would be unmeaning. She owns a legal estate under our statute in her separate estate. She is a single woman as to it. The statute making her estate separate in words says it shall be separate to her as if she were a single woman. A judgment for a tort is a personal judgment. *Van Metre* v. *Wolf*, 27 Ia. 341. Why does it not bind her separate estate? It would seem to be an anomaly and absurdity to implead her in court and render judgment against her, and yet say that judgment is fruitless, though she is legal owner of estate to satisfy it. The power to give judgment implies the power to enforce it. Authority, which I regard adequate to support this position, has come under my observation.

In *Merrill* v. *City of St. Louis*, 83 Mo. 244, it was held that "a general judgment against a husband and wife for a tort of the latter not committed in the husband's pres-

ence or by his coercion is binding upon both, and the separate property of the wife may be taken in execution." In the opinion it is said: "It is suggested that such a judgment could not be enforced on géneral execution. In the present attitude of married women in this state, and specially towards their separate estate, I perceive no such difficulty and embarrassment as the ancient common law threw around them. It does seem to me that learned judges have exhibited too much timidity, or reverence for legal antiquities, in adhering to rules after the reason for their existence has given away before our advancing civilization and broadening jurisprudence."

In *Smith* v. *Taylor*, 11 Ga. 22, the judge said, in a tort suit: "If there is a recovery, the judgment passes against both. If the wife has a separate estate, it may be taken in execution; and she may be, together with her husband, arrested on final process." See 1 Bish. Mar. Wom. § 908; *Musgrave* v. *Musgrave*, 54 Ill. 186; opinion in *Richmond* v. *Tibbles*, 26 Ia. 475,

Freem. Ex'ns, 128, says: "Judgments against them (married women) are generally binding to all intents and purposes, and are capable of being enforced in the same manner as judgments similar in other respects. Hence, when a personal judgment for money is entered against a married woman, either alone or in conjunction with other defendants, it is commonly conceded that execution may be issued, under which the sheriff may seize and sell her separate property."

What reason can be given to show the non-liability of her separate estate for torts? Is it that it required a statute to enable her by implication to make a contract to bind her estate, and that it is bound only so far as statute allows, and there is none declaring it bound for torts? There was necessity for legislation to enable her to hold separate estate, and to contract, as her contracts are void at common-law; but when was the time that the common-law did not assert her liability to tort? It required no legislation to enable her to become liable for her tort, and being liable, and having property, it logically follows that it must answer that liability. There is no prohibition in any statute. (See note at the end of this opinion.)

Is she liable for fines for her offences against the state? If, as I have sought to show above, she and her estate are liable in civil actions for tort, more so is she liable for penal offences. I need not cite authority to show her responsibility for crime. She is a jurisdictional person in a criminal law court. It can take jurisdiction over her and render judgment against her. It can hang or imprison her. It can impose a fine upon her. The very power to impose the fine of necessity implies the power to collect it. It is a personal judgment beyond doubt and binds her estate as such. There is no statute limiting the liability. It requires none to declare it. It occurred to me that the very power to give judgment carried with it as a consequence the liability of her estate to it. And so I find Mr. Freeman, in his work on Executions (section 22) says:

"It would be a contradiction in terms to say that all persons may be bound by judgments, and then to declare that some persons are exempt from having executions issued against them. The decisions in regard to the persons who may be parties to judgments are not perfectly harmonious; but wherever, under the law as understood in any particular state, a person, or class of persons, may be made parties litigant, and bound by judgments against them, it must follow, in the absence of statutes to the contrary, that the same persons may by executions be made to satisfy such judgments. In other words, when a judgment is valid against a defendant, an execution upon it, unless expressly forbidden by statute, must be equally valid. Execution may, therefore, issue against a lunatic and also against a married woman."

Mr. Bishop, in 1 Cr. Proc. § 1304, says: "A fine is treated as a judgment-debt, and binds a married woman."

In this state we assess separate fines against husband and wife for one act of selling liquor or assault and battery under a joint indictment. *Com.* v. *Hamor*, 8 Gratt. 698; *Com* v. *Ray*, 1 Va. Cas. 262. Who pays the wife's fine? I find it stated in 1 Hawk. P. C. c. 1, § 13, and Tyler, Inf. & Cov. 359, that the husband is liable for a forfeiture under a penal statute for the offence of the wife. And in *Hasbrouck* v. *Weaver*, 10 Johns. 247, in a *quitam* action a husband was

held liable for a penalty for a liquor sale made by his wife. But I should doubt his liability; and, even though he were liable, it does not follow that her estate is not liable.

I conclude that these executions were leviable out of the separate personal or real estate of the defendants. Therefore we affirm the judgment.

NOTE BY BRANNON, PRESIDENT.—Since the above opinion was filed, I have met with some law confirming the opinion expressed therein that the separate estate of a married woman is liable for her torts, which I think proper to add by note. 1 Bish. Mar. Wom. § 842, says: "Unless a wife is acting under what the law deems coercion from her husband, she can bind herself by her civil torts the same as though she were discovert. On the other hand, she has no such general power in respect to contracts, though that branch of the law which is administered in equity tribunals gives her a good deal of liberty in this respect. But it should be observed this liberty pertains merely to the thing contracted about, and does not extend to her person. Thus, if a wife commits a civil tort, though when sued during coverture her husband must be joined, yet on his death the judgment abides as a debt running alike against her and her property. But if a wife enters into a contract, she can not be sued at law." "Since she can commit crime, she would seem *a fortiori* to be responsible for her civil torts, there being a difference between her torts and her contracts." Id. § 43  In volume 2, § 165, Bishop says: "She can commit a tort subjecting her personally to a suit jointly with her husband, and the reversionary property to be taken on the execution," *etc*  In 14 Am. & Eng. Enc. Law 661, the point I stated above—that, being unlike as to contracts capable of incurring liability for torts, therefore her estate is liable—is confirmed by the statement that, if it be for a cause of action for which she may be liable, the judgment is valid, as if unmarried. and, on page 647. that the judgment for her tort may be "satisfied out of all her property."