# CHARLESTON.

LEROS v. PARKER *et al.*

Submitted February 13, 1917.   Decided February 27, 1917.

1. HUSBAND AND WIFE—*Torts—Wife's Liability.*

    Although by the married woman's act, chapter 66, Code, the husband is not exonerated from the common law liability for the torts of his wife, based as it is upon his presumed control over her person and conduct, yet by declaring that a married woman may sue and be sued as a *feme sole*, without joining her husband, where the action concerns her separate property, it imposes liability on her alone for the negligent management and control of such estate if therefrom injury results to another without fault on his part.   (p. 704).

2. NEGLIGENCE—*Condition of Property—Liability of Heirs.*

    Where, by the death of the ancestor intestate, title to his real estate devolves upon his heirs, they are liable for the consequences of its defective maintenance, although decreed to be sold, but not then sold, to satisfy his liabilities; and if by the removal of one or more walls of a building thereon, partially destroyed by fire, other walls are weakened so as to render them dangerous to persons or property, either because of the fire alone or jointly with other natural causes within the control of the owners, they are liable for any injury occasioned by the subsequent collapse or fall of one of such walls, the person injured being without fault in respect thereof.   (p. 702).

3. APPEAL AND ERROR—*Reversal—Instructions—Issue and Evidence.*

    Where upon the trial of an action each party requests and the court grants binding instructions upon the facts relied on by him, based on inconsistent but separable theories of liability, this court will not reverse solely because the instructions failed to present all the facts proved in support of each theory submitted for jury determination.   (p. 707).

Error to Circuit Court, Summers County.

Action by Thomas Leros against C. L. Parker, one Martufi, and others. Judgment for plaintiff, and defendants bring error.

*Reversed, and action dismissed as to defendant Martufi, and affirmed as to all others.*

*T. N. Read,* for plaintiffs in error.

*Wm. H. Sawyers* and *R. F. Dunlap,* for defendant in error.

LYNCH, PRESIDENT:

To recover for an injury inflicted on him while in a restaurant, by the collapse of the wall of a building situate at the intersection of Summers street and Third avenue in the city of Hinton and owned by the defendants, who are the heirs at law of J. A. Parker, deceased, plaintiff brought this action, and obtained the judgment charged to be erroneous. The place of the injury was a small adjoining building not owned by defendants. Parker died intestate prior to the year 1914, seized of valuable real estate in Hinton. After his death the building owned by him was destroyed by fire, except as to the side enclosures. The walls that remained standing along the street and avenue the defendant C. L. Parker removed down to the level of the second story, upon notice by the city; but he was not required to remove and did not remove, and did nothing to prevent the collapse of, either or any part of the remaining walls. Some of the brick from the wall that fell broke the sky-light above the restaurant, struck the plaintiff while a guest therein, and inflicted the injury for which he sued.

To reverse the judgment and defeat recovery, defendants rely on an unexecuted decree entered in a creditors' suit against the heirs directing a sale of the estate of the decedent and the appropriation of the proceeds to the payment of his indebtedness; the intervention of a wind-storm as the proximate cause of the injury; the introduction of inadmissible testimony and the exclusion of competent testimony; the giving and refusal of instructions; and the impropriety of a judgment against the husband of one of the Parker heirs.

The title to the property, by the statute of descents, vested in the heirs by the death of the ancestor. They thereby became liable for the maintenance of the building in a reasonably safe condition. If its walls became dangerous as the result of the fire, who except the owners must respond to the demand for compensation by those who suffer from the consequences referable to the negligent maintenance of the property? None other than defendants could be held liable for an injury chargeable to such defects. The maxim of the law,. the application of which now is timely and appropriate, is *sic utere tuo ut alienum non laedas.*

The contention that to effect a change in the condition of the property after the decree of sale, by removal or alteration of the walls, might operate as a contempt of court would have more merit if defendants had applied to that tribunal for permission, upon a petition assigning cause, to effect an alteration therein necessary to avoid any resultant injury to the person or property of another. It is not permissible to assume that the court, if requested, would withhold the permission to make such repairs or changes in the structure as would minimize the risk or probability of a danger threatened or imminent from the defective condition of the structure. Of that, however, nothing can now be said; because defendants did not resort to that expedient. Nor, so far as disclosed, did they make any effort to avoid the legitimate consequences of the dereliction in the discharge of the duty legally imposed upon them to protect others from such risks.

On the second point urged nothing need be said, other than that the proof regarding the violence of the wind-storm was submitted to the jury, who by its verdict determined that defense against the contention of the defendants. Their conclusion upon conflicting evidence on that phase of the inquiry submitted to them can not be ignored, since it can not be said the evidence was insufficient to support that finding.

The proof deemed inadmissible regards the injury to plaintiff's hand and two photographs introduced by him. The objection as to the first is that, while the proof tended to show a permanent injury, the declaration contains no averment as to such an injury. That criticism is not justifiable. The declar-

ation does charge that plaintiff "was struck and wounded by many violent blows and wounds received from the falling of the brick", which struck him "with great violence and force, and thereby rent, tore and damaged" the apparel and clothing of the plaintiff, and on divers parts of his body inflicted other severe and dangerous wounds and bruises, thereby necessitating the amputation of one finger of his left hand, by means whereof he was then and there hurt, bruised and wounded, and became and was sick, sore, lame and disabled, and so remained and continued for a long space of time, and was prevented and hindered from transacting his necessary affairs and business for the period of ninety days. These averments were amply sufficient to justify the introduction of the testimony of which complaint is made.

Of the correctness of the photographs, it is true, the photographer did not testify; he was not called as a witness. Although he doubtless possessed better qualifications to speak accurately upon that subject, yet it can not reasonably be held that other witnesses not engaged in that art, or qualified to speak with the same degree of certainty, were wholly incompetent. They said the photographs did accurately represent the condition of the plaintiff and of the interior of the restaurant as both were immediately after the accident.

Our examination of the instructions warrants the conclusion that the trial court did not err in giving or refusing them. The chief criticism is that plaintiff's instruction number one was improper, because, being binding, it failed to state the proof introduced under the theory of a violent and unexpected wind-storm, on which defendants sought to relieve themselves from liability. There was that omission, it is true. But it told the jury that "if they believe from the evidence" the plaintiff was without fault and defendants were the owners of the property "and the wall was in their control" at the time of the injury, and they negligently permitted it to become and remain so defective as to cause it to fall, then they should find for him. These were the facts upon which the plaintiff relied, and if the proof thereof satisfied the jury that the injury resulted from the defective condition of the structure, notwithstanding the intervention

of the wind, the instruction was not improper. Besides, for the defendants the court gave instructions inviting the attention of the jury to the ownership of the property, the decree of sale in the creditors' suit, and the "unusual and unexpected windstorm", and told them that if from these circumstances they believed the defendants were not negligent their verdict should be not guilty. These directions were as positive, unequivocal and binding as was the one given for plaintiff. Thus there was presented for consideration each theory on which the case was tried.

That Martufi, the husband of one of the Parker heirs, was made a party defendant and included in the judgment, is assigned also as a ground for reversal. By the common law, a husband is liable for the consequences of the tortious acts personally committed by the wife upon the person or property of another, whether instigated or procured by him or committed in his presence, with certain exceptions noted in *Gill* v. *State,* 39 W. Va. 479. That rule obtained in this state at the time of the adoption of the present constitution; and by §21, art. 8, "such parts of the common law and of the laws of this state as are in force when this article" went "into operation and are not repugnant" to the constitution were ordained to continue to be the law of this state until altered or repealed by the legislature. See also §5, ch. 13, Code. This power that department of the state government has not deemed it necessary to exercise for the purpose of absolving him from such liability. *Withrow* v. *Smith,* 37 W. Va. 762; *Kellar* v. *James,* 63 W. Va. 139.

But the acts or omissions with which this opinion deals regard the separate real estate of the defendant *feme covert;* her failure to act when duty required activity to maintain her property so as to protect the person and property of another from injury, and not wrongs intentionally and personally done by her directly affecting the rights of others. It is an omission to act in relation to the separate real estate of a married woman, when the due observance of a legal duty demanded affirmative action, with which we are concerned. By our statute, the control and management of the separate real estate of a married woman is committed to her, subject

to narrow limitations upon its disposal. That control and management and the usufruct thereof, at the common law, devolved upon the husband as an incident of the marital relation. But, by chapter 66, Code, she is authorized to deal with it as if she were a *feme sole*. It is not subject to his control, nor liable for his debts. And as to it she may sue or be sued alone as if she were unmarried. He now has no right to use the real estate of his wife except as her agent. The statute frees her from that dominion and control which served as the basis for the common law liability for her aggressive wrongful conduct, as for slander and assault or similar personal torts of the wife. In *Rowe* v. *Smith,* 45 N. Y. 230, she alone was held liable for injuries done by trespassing animals owned by her; in *Baum* v. *Mullen,* 47 N. Y. 577, for fraud in a contract for the sale of her real estate, although entered into by her husband; and in *Koning* v. *Manly,* 49 N. Y. 192, for a conversion, unless he aids or abets the wrongful act. In the same state, a married woman was held personally liable for an injury caused by the assault of a dog owned by her husband, the keeping of which on her real estate she permitted with knowledge of its inclination to attack and bite strangers, the husband being exonerated because not aware of any danger from that source. *Quilty* v. *Battie,* 135 N. Y. 201, 17 L. R. A. 521. The dog "was shown to have had vicious propensities to her knowledge, and on one occasion she interferred to protect it when a person whom it had attacked attempted to strike it in self defense". The theory underlying all these decisions was that, as the wife owned and controlled the premises, her separate estate, she personally was liable for the consequences of such ownership and control. After citing the married woman's act in force in that state, the opinion in the case last cited states: "There does not seem to be much room for doubt as to the scope and object of this language. It effectually removes the common law disabilities of the wife which deprived her of the possession and control of her property during coverture, and to that extent extinguished the common law rights and powers of the husband. Because it is in derogation of his common law privileges, it is to be rigidly applied, and not extended by

implication beyond its strict letter; but it is also a remedial act, and as to its clearly expressed subject matter it should have a liberal construction. Full and absolute ownership of all property which the wife might have or acquire, with all its incidents, privileges and burdens, was evidently conferred upon her by this statute. In the acquisition and enjoyment of such property, she shall be deemed to be an unmarried woman. Marital control of it was completely abrogated; not a trace of it was permitted to remain. Her husband is thus placed upon the same footing as a stranger, and has no greater authority than a stranger to impose a burden upon her separate estate or to restrict or embarrass her in the exercise of exclusive dominion over it". To us these deductions seem to be based on sound reason.

Although there is want of uniformity among the decisions on the variant phases of liability due to the assumption of the marital relation, some of them have likewise construed or interpreted the married woman's acts in force in the jurisdictions represented by them. They hold that, although by these statutes the rights of a *feme covert* are enlarged, in respect of the ownership and control of her separate real estate, and do not exonerate the husband from the personal torts committed by her, yet that they do operate to discharge him from liability or torts committed by her in the management and control of such separate estate. *Wollf* v. *Lozier,* 68 N. J. L. 103; *McFarlane* v. *Murphy,* 21 Grant Ch. (U. C.) 80; *Choen* v. *Porter,* 66 Ind. 196. The reason they assign is that, as thereby she is relieved of her common law disabilities and empowered to supervise and direct the management of her own property free from the interference of her husband, she should, with the privileges and proprietary incidents, bear the burden of such enjoyment, with due regard for the rights of others. *Mayhew* v. *Burns,* 103 Ind. 328; *Russell* v. *Phelps,* 73 Vt. 390; *Roberts* v. *Lissenbee,* 86 U. C. 136; *Eagle* v. *Swayze,* 2 Daly 140. This liability necessarily results from the capacity conferred upon her to acquire, hold and transfer property, and to deal with her separate estate as if she were unmarried. *Vanneman* v. *Powers,* 56 N. Y. 39; *Mayhew* v. *Burns, supra; Quilty* v. *Battie, supra.*

Judge Cooley, speaking of the influence exerted by statutes conferring upon married women the power to control property they own, and the liability for torts committed thereon by acts of omission or commission, says, while "it is not very clear how far the law of torts has been modified, * * we should probably be safe in saying that so far as they give validity to a married woman's contract they put her on the same footing with other persons, and when a failure to perform a duty under a contract is in itself a tort it may doubtless be treated as such in a suit against a married woman"; and he adds cautiously, what alone is here pertinent: "The same would probably be true of any breach of duty imposed upon a married woman as owner of property she possesses and controls the same as if sole and unmarried". Torts 118; *Boutell* v. *Shellaberger,* 264 Mo. 70. The case last cited, in vigorous language, discharged the defendant husband from liability for an injury occasioned to a passenger in an elevator operated in a building, the statutory separate estate of his wife.

But these authorities do not necessarily warrant more than a reversal as to Martufi, under the authority of *Pence* v. *Bryant,* 73 W. Va. 126, and *Bolyard* v. *Bolyard,* decided February 6, 1917. Therefore as to him we reverse the judgment, set aside the verdict and dismiss the action, and affirm the judgment as to his co-defendants with costs.

*Reversed, and action dismissed as to defendant Martufi, and affirmed as to all others.*