# CHARLESTON.

| 37 | 757 |
|----|-----|
| 39 | 485 |

| 37  | 757 |
|-----|-----|
| f63 | 142 |
| f63 | 571 |

WITHROW *v.* SMITHSON *et al.*

(HOLT, JUDGE, absent.)

Submitted January 19, 1893.—Decided March 25, 1893.

1. JUDGMENT—INSANITY—LIEN.
    A judgment against a person insane at its rendition is not for
    that cause void and is a lien on land.

2. JUDGMENT—INSANITY—WRIT OF ERROR—REVERSAL—EQUITY—
    JURISDICTION.
    A writ of error *coram nobis*, or a motion in lieu of it, is not a
    proper process to reverse such judgment because of the defend-
    ant's insanity, as the judgment can only be affected in equity,
    which has jurisdiction in such case.

J. W. DAVIS for appellants cited, High, Lun. 33 ; Id.
150 ; Id. 152; Id. 7; Id. 5 ; Chit. Pl. 79, 80; 6 Gratt. 216 ;
7 B. Mon. 268 ; 5 C. & P. 484 ; 24 E. C. L. 419 ; 3 Rob.
(New) Pr. 184 ; Code, c. 66 ; 5 Munf. 446 ; 6 Call. 279 ; 5
Munf. 95 ; 1 H. & M. 134.

W. W. ADAMS for appellee cited, Bus. Insan. § 131 ; Id.
139 ; 1 Freem. Jdgmts. (1886) § 152 ; Id. (1892) p. 275 ; Id.
§ 114 ; 75 Va. 816; 50 Md. 214 ; 63 Pa. St. 320 ; 31 Ohio
247 ; 60 Tex. 337 ; 47 Me. 548 ; 33 Me. 114; Odg. Slan.
(1881) 351 ; Code, c. 54, s. 41 ; 26 W. Va. 177, 182, 183 ;
21 Gratt. 712 :

BRANNON, JUDGE :

This was a suit in equity by Helen M. Withrow against
John A. Smithson and others for the purpose of enforcing
against land of said Smithson the lien of a judgment. The
defence was that the judgment was for slander uttered by
the wife of Smithson, and that he was insane, when the
trial took place, and when the judgment was rendered.
The answer prayed, as a cross-bill, that the judgment be
annulled because of such insanity. The case resulted in a

decree holding the judgment valid, and enforcing it as a lien; and Smithson appeals.

A judgment against one insane at the time it is rendered is not void, and can not be collaterally attacked; and, not being void, is a lien on land. Freem. Judgm. § 152; 1 Black, Judgm. § 205; Vanfleet, Collat. Attack, § 616; *Watt* v. *Brookover*, 35 W. Va. 323 (13 S. E. Rep. 1007) and citations; 11 Am. & Eng. Enc. Law, 127; 12 Am. & Eng. Enc. Law, 90, note 4; Busw. Insan. § 124; authorities cited in opinion and syllabus in *Sternbergh* v. *Schoolcraft*, 2 Barb. 153; *Allison* v. *Taylor*, 32 Am. Dec. 68; *Wood* v. *Bayard*, 63 Pa. St. 320; *Foster* v. *Jones*, 23 Ga. 168.

The point is made that the application to equity is mistaken, and that it should have been to the court of law which pronounced the judgment, by either writ of error *coram nobis* at common law, or by motion under section 1, c. 134, Code. There was in no manner a suggestion of Smithson's insanity in the record of the judgment. A writ of error in appellate courts corrects errors of law apparent in the record; but if at the date of the judgment there exist a fact, which, had it been introduced into the record, ought to have prevented the judgment, but it was not introduced, it is a case of error in fact, to be corrected by writ of error *coram nobis*, or by such motion. Thus, if the defendant be dead, and his death be pleaded in the action, but the court disregard it and render judgment, that is error of law, because the court having the fact before it in the record has rendered a judgment contrary to law, as the record showed the defendant to be dead, and a writ of error in an appellate court would correct it; but where the death is not presented, and judgment is rendered, that is error in fact, to be corrected by writ of error *coram nobis* or motion. *Jaques* v. *Cesar*, 2 Saund. (Williams' Notes) 101a; 2 Tidd, Pr. 1191; 2 Tuck. Comm. 328; 4 Minor, Inst. 947; note to *Holford* v. *Alexander*, 46 Am. Dec. 257.

Death, infancy, and coverture are conceded grounds of error in fact, as a basis for writ of error *coram nobis;* and I would consider insanity of like nature, and ground for that writ, and not for equity jurisdiction, were it a cause at law for reversal of a judgment. But I do not think that insan-

ity of the defendant at the date of the judgment is a reason for the reversal of the judgment by procedings at law. Some authorities look that way. It is stated in 1 Freem. Judgm. § 94, that insanity is a matter to affect judgment by writ of error *coram nobis*. But no case cited supports this, and section 152 is pointedly to the contrary. Likewise, *Allison* v. *Taylor*, 32 Am. Dec. 68.

In *Leach* v. *Marsh*, 47 Me. 548, the Court said of insanity of defendant: "This is an error not appearing on the face of the record. It is an error of fact, if error it is." And the judgment was reversed.

In *Daggett* v. *Chase*, 29 Me. 361, the opinion states it, as law, that it is a subject of writ of error *coram nobis*.

Mr. Black in volume 1 §, 205, of his work on Judgments, maintains that, though a judgment against a lunatic is not void, yet it is reversible in the same court which rendered it; and in *Lamprey* v. *Nudd*, 9 Fost. (N. H.) 299, it is held that insanity is good cause for reversing such judgment. There it is admitted that such is not the law under English decisions.

Mr. Buswell's examination brings him to the conclusion that it can only be affected in equity. Busw. Insan. § 140.

In section 152 of 1 Freem. Judgm., it is stated as law that, while an occasional difference of opinion manifests itself as to the propriety or possibility of binding *femes covert* and infants by judicial proceedings, in which they were not represented by some competent authority, no such difference has been made apparent in relation to a more unfortunate and defenceless class of persons; but by a concurrence of judicial authority lunatics are held to be within the jurisdiction of the courts. Judgments against them, it is said, are neither void nor voidable. They can not be reversed for error on account of defendant's lunacy; the proper remedy in favor of a lunatic being to apply to chancery to restrain proceedings, and compel the plaintiff to go there for justice." The current of authorities sustain this statement of the law.

A lunatic is within the jurisdiction of the Court, and may be sued, as others. The Court may appoint a guardian *ad litem* to defend him, if his lunacy is discovered; but, if

the case goes on without such guardian, the judgment is not void or reversible. As the authorities clearly show a lunatic to be subject to actions, it is reasonable to say that the same forum would not reverse the judgment because of lunacy. See 3 Rob. Pr. (New) 240; opinion in *Bolling* v. *Turner*, 6 Rand. (Va.) 586; *Beverley's Case*, 4 Coke, 123b; *Mansfield's Case*, 12 Coke, 123; Bac. Abr. tit. "Idiots and Lunatics," F; *Stigers* v. *Brent*, 50 Md. 214; *Wood* v. *Bayard*, 63 Pa. St. 320; note to *Allison* v. *Taylor*, 32 Am. Dec. 70; *Johnson* v. *Pomeroy*, 31 Ohio St. 247; *King* v. *Robinson*, 33 Me. 114; *Foster* v. *Jones*, 23 Ga. 168; *Woods* v. *Brown*, 93 Ind. 164, opinion; *Sternbergh* v. *Schoolcraft*, 2 Barb. 154; Busw. Insan. §§ 139, 140.

The case of *Horner* v. *Marshall*, 5 Munf. 466, sustains a bill to enjoin a judgment against a lunatic, thus inferentially holding that no remedy exists at law; and I solve this question, on which opinions conflict, by holding that the only redress is in equity. It seems very plain that a judgment against one so insane as to be incapable of making defence, and armed with good defence, should not stand irrevocable, and gross injustice be thus enforced. It is one of the birth springs of equity jurisdiction that it renders justice where the law is harsh, and its remedy blank or inadequate. The case of an unjust judgment against a lunatic would seem to be a fit place for its intervention. The Virginia case above cited (*Horner* v. *Marshall*) calls upon us to sustain its jurisdiction in such cases. Old English cases sustain such jurisdiction. Bac. Abr. tit. "Idiots," F, b; *Addison* v. *Dawson*, 2 Vern. 678. It will be seen from law above cited, and also *Milner* v. *Turner's* Heirs, 4 T. B. Mon. 240, and *Maloney* v. *Dewey*, 127 Ill. 395 (19 N. E. Rep. 848) that equity has such jurisdiction; and Chief Justice MARSHALL's decision in *Tabb* v. *Gist*, 6 Call, 279, also sustains it.

Equity having jurisdiction, ought the court, in this case, upon the evidence, to have overthrown the judgment? We think not, as in our opinion the evidence fails to sustain the allegation of insanity. We are the more satisfied in reaching this conclusion as we find that a full and, so far as we see, adequate defence was made to the action, in which the judgment was rendered.

Appellant in his answer and in the brief of counsel in this Court presents as a ground to annul the judgment the fact, that it was for slander uttered by his wife in his absence and without his instigation. As to this I need only say that, if any error was committed in this respect, it was to be redressed by writ of errors not in equity; and as to this the judgment is a finality. In the Horner Case, *supra*, the slander was by the insane person, so that he was not liable, while here it was by his wife, and his insanity in that respect would be immaterial, as he would be liable for her slander, though he were insane. I think, however, in the Horner Case, that the judgment would be a finality as to question of liability.

I will add, however, though not as a matter of decision, that the common-law rule making the husband liable for the slanders and other torts of his wife seems yet to prevail. If there ever was any justification for this hard principle in the fact that at common-law the husband became owner of his wife's estate, there is no longer any such reason, since the married woman's acts have preserved such estate and her earnings to her as her separate estate, free from his control, enjoyment or liabilities; and the continuance of the old rule, making the husband liable for the wife's torts, is, in my opinion, wholly out of joint with the times, and the spirit of the age, and is an inequity and injustice calling loudly for legislative relief. It seems strange that it has stood so long. The husband has no effective power of restraint or control over his wife. He has not and should not have right to chastise her. He is held liable for her torts in his absence, and against his will and protest. How unreasonable, even monstrous! He has no means of self-protection. So strong is this feeling that the Illinois court has held that the statutes giving the wife control of her separate property and her earnings will exonerate the husband from liability for the torts of his wife, done in his absence and without his participation, on the theory that such statutes operate as an implied repeal of the common-law rule. But three judges out of seven dissented, and I do not myself think the decision tenable. I have not found it elsewhere sustained. *Martin* v. *Robson*,

65 Ill. 129. See, as bearing on these subjects, 1 Bish. Mar. Wom. §§ 905, 907, 909; 1 Minor, Inst. p. 345; note *Com. v. Neal*, 6 Am. Dec. 107; 2 Kent. Comm. 149; *Yeates* v. *Reed*, 32 Am. Dec. 43; Schouler, Husb. & Wife, § 134.

We affirm the decree.

AFFIRMED.