# Richmond

LLOYD JUNIUS DOBIE, ALIAS LLOYD JAMES FIELDS, LLOYD JUNIUS FIELDS, LLOYD JAMES DOBY AND DOCK DOBY V. COMMONWEALTH OF VIRGINIA.

March 11, 1957.

Record No. 4643.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*Roland D. Ealey,* for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General (J. Lindsay Almond, Jr., Attorney General,* on brief), for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of Southampton county entered on March 10, 1956, refusing to set aside and annul an order of that court entered on November 11, 1955, finding the defendant, Lloyd Junius Dobie, alias, etc., guilty of rape, for which he was on December 6, 1955, sentenced to death.

At the May term, 1955, the grand jury of the county returned two indictments against the defendant, one charging him with robbery and the other with rape, both committed on February 8, 1955, against Lillian Vann Scott, forty-eight years old. The defendant entered a plea of guilty to the robbery indictment and was sentenced to life imprisonment. No complaint is made with respect to that conviction and we are here concerned only with the conviction for rape.

On August 15, 1955, some six months after the offenses were alleged to have occurred, the defendant was brought back from Baltimore on extradiction and lodged in the Henrico county jail in Richmond. On October 17, 1955, he was brought before the Circuit Court of Southampton county for arraignment, but being without counsel he was not allowed then to plead and the court then appointed Richard E. Railey and Fred C. Stewart, "able and competent attorneys at law practicing before the bar of this Court" to defend him.

On November 11, 1955, the defendant was arraigned on the indictment charging him with rape, and after being advised by his previously appointed counsel he in person entered a plea of guilty and, as shown by the order of that day, "the Court being of the opinion that the accused fully understood the nature and effect of his

plea, proceeded to hear and determine the case without the intervention of a Jury as provided by law. [Const. of Va., § 8] And, having heard the Commonwealth's evidence, the accused not presenting any evidence, the Court doth find the accused guilty of rape of Lillian Vann Scott as charged in the indictment."

The evidence introduced by the Commonwealth, and not contradicted or denied, was to this effect:

About three o'clock in the afternoon of February 8, 1955, Mrs. Scott was at work alone in the office of her employer on Main street, in the town of Franklin. The defendant entered the office and said to her, "this is it lady . . . . . this is a stick up." He required her to open the drawers of the desk and filing cabinets. When no money was there discovered he took from her her rings, watch and money she had in her purse; then he ordered her to open the safe and later to draw a check on her employer. To enforce these demands he brutally beat her with a piece of metal which he held in his hand. During these assaults he told her he was a desperate man and she had to do exactly what he said. He locked the office door, took her into an adjoining room, told her she was little and pretty and it was a shame for her to get messed up but he was going to rape her and then kill her so that what happened to one of his buddies was not going to happen to him. She struggled with him for some time, screaming and bleeding from her wounds. Finally he took hold of her hair, jerked her head back and struck her over her ear with the piece of metal. She lost consciousness and when she recovered she was lying in the middle of the floor and the defendant was having intercourse with her.

She was taken to a hospital where she was examined by a doctor who testified that she had been severely beaten with a blunt instrument; her pelvis, some of her ribs, two of her fingers and some other bones were broken. She remained in the hospital some thirty days.

The doctor found no evidence of rape other than that her knuckles were bleeding and on the inner aspect of her right thigh he found marks which looked like a hand or fingers with blood on them had been pushed down in some protective effort. He could not say from his examination whether she had been raped but he explained that she was a grandmother and if intercourse had occurred it would not necessarily have left any marks. The nurse who undressed Mrs. Scott said there was blood on her clothing and along the bottom edge of her girdle there was a smear which she described and which the jury

could have related to the act of intercourse.

On the way back to Virginia from Baltimore the defendant told the officers he did not remember attacking Mrs. Scott and did not realize anything had happened until he got to Norfolk and found he had her rings and watch, and he did not remember "getting on anybody."

At the conclusion of the evidence, on the motion of the defendant, the court directed the probation officer of the court to investigate and report upon the history of the defendant, as provided by § 53-278.1 of the Code. This report was filed on December 6, 1955, and proceedings thereon were in accordance with the statute. It showed, in addition to a number of lesser offenses, a sentence of eighteen years in the Maryland penitentiary on June 1, 1955, on a conviction of armed robbery and assault, and another case of burglary still pending against the defendant in Baltimore.

By order of December 6, 1955, the punishment of the defendant was fixed at death in the electric chair; and after the defendant was asked if he had or knew anything to say why judgment should not be pronounced against him, and nothing being offered or alleged in delay thereof, he was sentenced accordingly.

On January 16, 1956, on motion of the defendant, then represented by new counsel, the execution was postponed to March 23, 1956, to give the defendant an opportunity to apply to this court for a writ of error and supersedeas; but none was applied for.

On February 16, 1956, the defendant filed in the trial court a written motion in the nature of a petition for a writ of error *coram vobis* under § 8-485 of the Code, in which he alleged that he was a colored man twenty-five years old and had been sentenced to death for the rape of a white woman on February 8, 1955; that on being returned to Virginia on extradition from Maryland in July, 1955, he had been incarcerated in the city of Richmond and there held incommunicado to the whole world except the prosecution officers of Southampton county and not permitted to see a lawyer, relative or friends; that on his trial he had not been called to testify; that no exceptions were taken to procedures during his trial, thus preventing him from seeking to establish his innocence by appeal on the original record.

He alleged further that he did not question the integrity of counsel appointed by the court to defend him but alleged that he was not given an opportunity to explain his plea of guilty by testifying in his own behalf; that he was a person of meager training, victim of a

broken home and lack of parental care. In spite of that, he alleged, he asserted his innocence of the rape charge to his counsel but tendered his plea of guilty on their advice, "which no doubt was made with the sincere belief that the same was for his best interest; nevertheless the same raises the grave doubt as to whether it was voluntary, free, without fear, without hope of reward (in this instance escape of electrocution) or other cause."

He further alleged that "the possibility of a shadow of doubt" as to his guilt appeared from the original record, which was made a part of his motion; and the prayer of his motion was that the judgment of conviction be reversed or corrected and that he be awarded a new trial.

The defendant filed his own several affidavits to support the charges of his petition; the Commonwealth filed its answer accompanied by the affidavits of defendant's appointed attorneys, the sheriffs of Henrico and Southampton counties, and the chief of police of the town of Franklin, controverting the charges made by the defendant's petition; and by order entered on March 3, 1956, the court set the matter down for hearing on March 10, 1956, on evidence to be taken in open court.

At the March 10 hearing the defendant testified that he first spoke to his attorneys when they were appointed to defend him; that his first conference with them was in the jail about a week later; that they then asked him if he was guilty and he responded that he was guilty of the robbery charge but not of the rape; that they then told him his best bet was to enter a plea of guilty because if he took the stand he would make things worse than they were. He said that he then asked them if he could have the judge try him and plead guilty of the robbery but not of the rape, and they said no; that they then said "you take the judge for trial and let us handle everything so I say all right." He further testified that two or three weeks later he had another conference with his lawyers in which "the biggest thing they talked to me on was getting me to plead guilty"; that they said if he would plead guilty they would get him off light. He said they advised him he could "get the chair" for the robbery and he was fully aware of that when he admitted his guilt; but he said the reason he pleaded guilty was because he was scared and the lawyers said if he would enter a plea of guilty the judge would have mercy on him.

He said he told his lawyers he wanted to testify but they told him to keep his mouth shut and let them handle things, that if he testified he would make things worse.

He made admissions on cross-examination contradictory of his claim that he was held incommunicado in the jails. He also admitted that when his attorneys came to the jail to see him after their appointment he asked them if it wouldn't be better for the judge to try him and told them he would like for the judge to try him; that he said this because "I had been before a judge on the rest of my cases."

Thereupon the Commonwealth called as witnesses the sheriffs of Henrico and Southampton counties, a deputy of the latter, the chief of police of the town of Franklin, and the attorneys who had represented the defendant on his trial. The substance of their testimony was this:

The defendant was never held incommunicado either in the Henrico or the Southampton jail, nor was he in any way there mistreated but was accorded the same privileges as other prisoners and never denied the right to communicate with his lawyers, relatives or friends.

On the day of the defendant's trial in Baltimore, in May, 1955, the defendant denied to the officers that he had raped Mrs. Scott, but said he had robbed her. Later, in August, 1955, when the defendant was being brought back from Baltimore, he said he remembered going into the office and beating the lady, but he did not remember all he had done because he was drunk; that he remembered robbing Mrs. Scott but he did not remember what he got and did not remember getting on anybody that day. After the defendant was sentenced and was back in the Southampton jail, he volunteered the statement that he did not know whether he raped this woman or not, and only the good Lord knew whether she was telling the truth.

The two attorneys appointed to defend the accused conferred with him together three times and one talked to him alone on another occasion before the trial. At the first conference they told him the court had appointed them and they would do the best they could to defend him. He told them he had robbed the prosecutrix but did not remember raping her. He was told there was some evidence that he had raped her and he replied, "if they say I did it, I must have done it but I don't remember doing it." They asked him whether he wanted the jury or the court to try him, and he said he wanted the court to try him, and "what do you all think?" They told him they would leave that to him and would do whatever he wanted, and he replied that he did not want a jury but wanted the court. One of them replied that he believed the defendant would probably do better to have the court try the case. On that occasion they spent some time with

him talking about his family history and his record, looking to the probability that a probation report might help him.

They talked with the Commonwealth's attorney about a plea of guilty to the rape charge with an understanding that he would recommend a life sentence, which he declined to do. They thought then they might get a trial before the court on a plea of not guilty, with the possibility that the Commonwealth might fail to prove some element of the case. They were told, however, that the court would not agree to try the defendant without a jury on a plea of not guilty (Const., § 8), and that fact is stipulated in the record. The attorneys told the defendant of this situation and that if he wanted the court to try him he would have to plead guilty, otherwise he would have to be tried by a jury. The defendant decided he wanted to plead guilty and throw himself upon the mercy of the court. This was, they said, his own decision, made after they had acquainted him with all the possibilities, including what the penalties were for the crimes charged against him.

On the morning before the trial, and possibly on one occasion before that, his attorneys discussed with the defendant whether he should testify. It was their considered opinion derived from their preparation of the case, its nature, the defendant's record, and other things involved, that he should not take the stand, and they stated to him their reasons for their opinion and the defendant told them he did not want to testify. They did not prohibit him from doing so or tell him that he would make things worse if he did.

After hearing the evidence the court entered the order of March 10, 1956, now appealed from, denying the defendant's motion to set aside and annul the judgment of conviction for rape entered on November 11, 1955. The defendant assigns error to this ruling on the grounds, first, that said conviction was on an involuntary plea of guilty; and, second, that there was a conflict in the evidence which raised a reasonable doubt as to the defendant's guilt.

■ Section 8-485 of the Code, under which the defendant's motion was filed, is as follows:

"For any clerical error or error in fact for which a judgment or decree may be reversed or corrected on writ of error coram vobis, the same may be reversed or corrected on motion, after reasonable notice, by the court, or by the judge thereof in vacation."

The writ of error *coram vobis,* or *coram nobis,* is an ancient writ of the common law. It was called *coram nobis* (before us) in King's

Bench because the king was supposed to preside in person in that court. It was called *coram vobis* (before you—the king's justices) in Common Pleas, where the king was not supposed to reside. The difference related only to the form appropriate to each court and the distinction disappeared in this country when the need for it ended. 49 C.J.S., Judgments, § 311, p. 561, n. 28. Mr. Minor says the proper designation here is *coram vobis*. IV Minor's Inst., 3 ed., Part I, pp. 1052-3.

The principal function of the writ is to afford to the court in which an action was tried an opportunity to correct its own record with reference to a vital fact not known when the judgment was rendered, and which could not have been presented by a motion for a new trial, appeal or other existing statutory proceeding. Black's Law Dict., 3 ed., p. 1861; 24 C. J. S., Criminal Law, § 1606 b., p. 145; *Ford v. Commonwealth*, 312 Ky. 718, 229 S. W. 2d 470. It lies for an error of fact not apparent on the record, not attributable to the applicant's negligence, and which if known by the court would have prevented rendition of the judgment. It does not lie for newly-discovered evidence or newly-arising facts, or facts adjudicated on the trial. It is not available where advantage could have been taken of the alleged error at the trial, as where the facts complained of were known before or at the trial, or where at the trial the accused or his attorney knew of the existence of such facts but failed to present them. 24 C. J. S., Criminal Law, § 1606 at p. 148; 49 C. J. S., Judgments, § 312 c., pp. 563, 567.

If the applicant has knowledge of a fact which would have been for his benefit if divulged, he cannot be permitted to conceal it, gamble upon the issue, and after an adverse decision ask the court to relieve him from the consequences of his own intentional or negligent act. 31 Am. Jur., Judgments, § 806, p. 325; *State* v. *Boyd*, 117 Neb. 320, 220 N. W. 281, 58 A. L. R. 1283, and Anno. at 1286.

■ The writ was of judicial not legislative origin, springing from the requirements of justice in cases where there was no other remedy. It is in the nature of a civil action, analogous to a motion for a new trial but on a ground not known in the original trial and hence not reviewable by appeal or motion to set aside the verdict. *United States* v. *Morgan*, 346 U. S. 502, 98 L. ed. 248, 74 S. Ct. 247, dissenting opinion at p. 255; *Sanders* v. *State*, 85 Ind. 318, 44 Am. Rep. 29; *State* v. *Gentry*, 223 Ind. 535, 62 N. E. 2d 860, 161 A. L. R. 532; *Ernst* v. *State*, 179 Wis. 646, 192 N. W. 65, 30 A. L. R. 681.

It has been used to inquire into the validity of a claim that a plea of guilty was entered through the coercion of fear or fraud. *United States* v. *Morgan, supra; Taylor* v. *Alabama,* 335 U. S. 252, 92 L. ed. 1935, 68 S. Ct. 1415; *Chambers* v. *State,* 117 Fla. 642, 158 So. 153; *State* v. *Lindsey,* 231 Ind. 126, 106 N. E. 2d 230; Anno., 30 A. L. R. 686.

Section 1, chapter 181, of the Code of 1849 was in the same words, except a phrase now immaterial, as present section 8-485, *supra.* In *Richardson's Ex'x* v. *Jones,* 12 Gratt. (53 Va.) 53, decided in 1855, the trial court at its May term, 1852, set aside a judgment rendered at the preceding October term because improperly entered as a judgment of confession, the error, however, not appearing from the record and requiring proof. This court held that the correction could not be made by a writ of error *coram vobis,* and said:

"* * * This writ lies where some defect is alleged in the process or the execution thereof, or some misprision of the clerk, or some error in the proceedings arising from a fact not appearing upon their face, as where judgment is rendered against a party after his death, or who is an infant or *feme covert.* * * But it does not lie to correct any error in the judgment of the court, nor to contradict or put in issue a fact directly passed upon and affirmed in the judgment itself. * *."

[■] In the present case it was very clearly shown by the evidence heard by the trial court that no error in fact existed in its judgment of conviction entered on November 11, 1955, for which a writ of error *coram vobis* should issue and for which the defendant's motion under the statute should be granted.

In the order of October 17 appointing counsel for the defendant, nearly a month before his trial, the court certified that the counsel so appointed were "able and competent attorneys at law." In his petition the defendant says he does not question their integrity or doubt their sincerity, and in oral argument his present counsel stated that he was ably represented.

The evidence leaves no doubt that his plea of guilty was the result of his own choice, made after full disclosure to him by counsel of its nature and its possible result. There is no suggestion that he was put in fear by his counsel or that they practiced any sort of fraud upon him. Indeed, the case is entirely free of any evidence that the result of the trial was induced or in any way influenced by any improper act of the Commonwealth's officers or any threat of violence or any sort of intimidation from any source. The defendant was, of course,

under the natural fear of the consequences of his acts and was seeking the course that offered the best hope. He was not a novice caught up in a criminal trial and acting without ability to make a rational decision. He had just been through a felony trial in Baltimore and had been in courts on lesser charges several times before. With this experience and with the advice of counsel who were, he concedes, able and honorable, he made his choice as to his plea, knowing the circumstances of it as well then as he does now.

The court found and stated in its order that the defendant fully understood the nature and effect of his plea. It did not turn out as the defendant hoped, but whether the result would have been more favorable had he chosen to be tried by a jury no one can say. The fact remains that the plea he entered was not the result of coercion by fraud, fear of violence or other means. If a mistake was made, it was a mistake on the part of the defendant and his counsel on a question of procedure, not a mistake in fact correctible by writ of error *coram vobis* or on the defendant's motion under the statute. That writ or motion cannot serve to gain a new trial for a defendant after a conviction on a plea of guilty merely because he might have fared better on a plea of not guilty.

It is sufficient answer to defendant's remaining assignment of error; *i.e.*, that there was a reasonable doubt of his guilt on the original trial, to say that his motion under the statute does not reach that question. It does not have the function of a writ of error to the original judgment so as to bring that judgment under review. 49 C. J. S., Judgments, § 312 c (5), p. 567. Additionally it may be said that the evidence was ample to sustain the finding that the defendant was guilty of the crime charged against him and it was the duty and responsibility of the trial court to fix his punishment within the limits provided by the law.

The order appealed from is accordingly

*Affirmed.*