## 18350

The STATE, Respondent, v. Tommy LILES, Appellant
(142 S. E. (2d) 433)

60

*James N. Rahal, Esq.,* of Savannah, Georgia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *J. C. Coleman* and *Edward B. Latimer, Assistant Attorneys General,* of Columbia, *for Respondent,*

May 17, 1965.

Moss, Justice.

Tommy Liles, the appellant herein, was indicted at the 1956 April term of the Court of General Sessions for Spartanburg County, and charged with the crime of murder. The indictment alleged that on February 4, 1956, the appellant, with a pistol, did kill and murder Mrs. Mattie Liles, his wife. This case was called for trial on July 25, 1956, and the appellant entered a plea of guilty to manslaughter and was sentenced by the Presiding Judge to imprisonment for a period of thirty years. He is presently serving this sentence in the State Penitentiary.

It appears that the appellant, on October 1, 1958, through an able attorney, filed a motion before the Honorable Steve C. Griffith, Presiding Judge of the Seventh Circuit, for a new trial based upon after discovered evidence. The motion of the appellant was supported by several affidavits and also a transcript of the evidence taken at the coroner's inquest, and at two preliminary hearings. The new evidence relied upon by the appellant was that his stepson and the son of his deceased wife made a statement to the officers to the effect that he saw the appellant immediately after the killing placing a pistol in the hands of the deceased; and this witness, by affidavit, has now repudiated that statement and all prior statements that were prejudicial to the appellant. The appellant, by his affidavit, asserts that he did not shoot his wife but had only endeavored to take from her a pistol that she had drawn on him. He further averred that a short time before his case was called for trial that he had been injured in an automobile wreck and was under the care of a physician. He states that he was not in full possession of his faculties at the time he entered a plea of guilty to manslaughter. There was also an affidavit from a physician that the appellant had been in an automobile accident a few hours before his trial and suffered a severe bruise of his chest and such required sedation. It appears from the affidavit of this phy-

sician that the Court had appointed two physicians to examine the appellant prior to his trial.

By order, dated October 21, 1958, Judge Griffith denied the motion for a new trial on the ground of after-discovered evidence, holding that he was not convinced that the new evidence would probably change the result of the trial. He further found that there was ample testimony to justify a verdict of manslaughter. He found that "the deceased was killed by being shot in the back and there is nothing in the record to explain how this could have been accomplished by the deceased or the defendant while, as he says, he was trying to take the pistol from the deceased to protect himself." There is no appeal from this order.

The appellant filed a petition for a writ of *habeas corpus* in the United States District Court on October 1, 1959. This petition was denied by an order of United States District Judge C. C. Wyche on October 15, 1959, holding that the appellant had not exhausted the remedies available to him in the Courts of South Carolina. He further held that "In my opinion the motion and the files and record of this case referred to by petitioner in his petition conclusively show that the petitioner is entitled to no relief."

The appellant filed a petition, dated August 13, 1959, for a writ of *habeas corpus* in the Court of General Sessions for Richland County, South Carolina, alleging that he was a prisoner in the State Penitentiary located in Columbia and that he was there illegally imprisoned and restrained of his liberty. He asserts that he involuntarily entered a plea of guilty to manslaughter upon the misleading advice of his attorneys and because he was not adequately represented by them. A hearing upon such petition was held on November 24, 1959, before the Honorable James Hugh McFaddin, Presiding Judge. At such hearing the appellant requested, and obtained, permission from the Court to be represented by one Gentlee Hollman. The appellant submitted the numerous affidavits which had been used at his previous hearings. The appellant testified that several days prior to his trial he

was under a doctor's care and taking medicine because of an injury received in an automobile collision. He testified that he was advised and forced to plead guilty under the advice of his employed counsel. He testified that counsel advised him that on account of what the State's witnesses would testify to, that he and his parents, brothers and sisters were told that he could "get the electric chair, if I didn't plead guilty." We quote from the appellant's testimony:

"Q. Well, what I am asking you is why did you plead guilty, if it wasn't of your own free will?

"A. Because the lawyers said so.

"Q. Because the lawyers said so?

"A. Yes, sir.

"Q. In other words, the way I get it, you plead guilty solely because you believed that was the only way you could save your life?

"A. That's right.

"THE COURT: You pled guilty, as I understand it, to get 30 years instead of going to the chair, isn't that right?

"THE PETITIONER: That's the way it was as I remember it, yes, sir."

The appellant also testified that when he was at Court for the trial, that his relatives were present and the lawyers and his relatives talked a long time "and finally they all got together and pleaded me guilty to manslaughter, and I went before the Judge and he sentenced me and that's all there was to it." He further testified that his employed counsel told him and his relatives that if he stood trial "there was a big chance" of his getting the electric chair, and based upon the advice of his lawyers and his relatives he pled guilty to manslaughter. At another place in his testimony, with reference to what his attorneys told him, said: "His advice was that the best thing to do was to plead guilty to manslaughter." He testified that the Solicitor never threatened him at any time but that some officer said he "might get the chair."

Upon being questioned by the Trial Judge, the following took place:

"THE COURT: I say, it was a bad matter, and at that time it looked right dark for you, didn't it?

"THE PETITIONER: I think so.

"THE COURT: And you agreed to that at that time, didn't you?

"THE PETITIONER: Yes, sir.

"THE COURT: And you have since changed your mind?

"THE PETITIONER: I didn't want to agree to it, but they said that was the only thing to do.

"THE COURT: Well, you agreed to it—he put it up to you and didn't force you, did he?

"THE PETITIONER: That's right.

"THE COURT: And you made the decision?

"THE PETITIONER: Yes, they finally forced me in a way.

"THE COURT: He just told you, in effect, that you do what you wanted to; that you would have to die and not him?

"THE PETITIONER: No, sir, he didn't put it that way.

"THE COURT: Well, tell me exactly how he put it.

"THE PETITIONER: He just said that I stood a chance of getting the chair, if I didn't plead guilty."

The appellant testified that no representation was made to him as to what term of imprisonment he would receive. When asked if he knew what his sentence would be, he replied, "All I know was that it was going to be manslaughter", and when asked if he knew what the length of the sentence would be, he replied, "There was nothing mentioned about that, and I didn't know what manslaughter carried."

The Trial Judge, with reference to the two attorneys who represented the appellant, said: "You had two of the greatest lawyers representing you in the southeast", and "There has been no injustice in your case, if those fellows told you to plead guilty. I know them both and they are able lawyers. If I had committed a crime, there is nobody in this State,

or in any State that I know of, that I would rather go to Court with than" the lawyers representing the appellant.

Thus, it appears that a full hearing was held before Judge McFaddin upon the petition of the appellant for a writ of *habeas corpus*. By an order dated December 31, 1959, this petition was denied by the Trial Judge upon the ground that sufficient legal or factual grounds do not exist for the relief demanded. There was no appeal from this order.

The appellant filed a petition, dated December 21, 1959, for a writ of *habeas corpus* in the Court of General Sessions for Spartanburg County, alleging that he was a prisoner in the State Penitentiary and that he was there illegally imprisoned and restrained of his liberty. He again asserts that he involuntarily entered a plea of guilty to manslaughter upon the misleading advice of his attorneys and because he was not adequately represented by them. It is noted that this petition was filed during the pendency of and prior to determination of the case before the Honorable James Hugh McFaddin. This petition was denied by the Honorable J. Woodrow Lewis, then a Circuit Judge, and now an honored member of this Court, by an order dated January 27, 1960, upon the grounds that the contentions of the appellant had been submitted both to the State and Federal Courts and decided against him, and that he had at the time a proceeding in the Federal Court raising the same points which he sought to raise in this proceeding.

The appellant, by petition dated July 21, 1961, applied to the Court of General Sessions for Spartanburg County for a writ of error *coram nobis,* alleging that he was not guilty of the crime to which he entered a plea of guilty and that about three hours before he entered a plea of guilty to manslaughter he "had been injected with two one-quarter grain tablets of morphine and had taken (by mouth) some other pills", and that he "was heavily under the influence of narcotics which had been prescribed by his Doctor when he was, against his will and better judgment, in-

timidated into pleading guilty to manslaughter." He further alleged that his counsel was negligent and he did not have effective legal representation. Attached to this petition was an affidavit of Dr. J. B. Cash, wherein he averred that the appellant "had an automobile accident a few hours before he was tried in the General Sessions Court for Spartanburg County for murder." He further averred that he was of the opinion that the appellant at the time of his trial was not physically or mentally capable of intelligently answering questions due to "his mental fogginess from the dope that was given him for the relief of his pain." There was also attached an affidavit by a brother, a sister and the mother of the appellant, wherein they aver that they attended the trial of the appellant and that his attorneys attempted to get him to plead guilty and accept life imprisonment but in response thereto the appellant "would tell his attorneys that he was not guilty and that it was hard to plead guilty and accept life imprisonment." These affiants further stated that finally the appellant was asked to plead guilty to the crime of manslaughter and they, being under the impression that Liles would be sentenced to death in the electric chair, urged him to plead guilty to manslaughter, and that he did enter such plea while still protesting his innocence.

By order, dated August 14, 1961, from which this appeal is taken, the Honorable Bruce Littlejohn, Resident Judge of the Seventh Circuit, denied the application of the appellant for a writ of error *coram nobis* upon the ground that he several times previously had submitted the same issue to both Federal and State Courts and after full hearings in at least two cases, he had been unsuccessful in his efforts to obtain relief. Timely notice of intention to appeal to this Court was duly given.

The appeal in this case came on to be heard by this Court at the 1964 January term. Thereafter, on February 5, 1964, we filed an opinion affirming the order of the lower Court dismissing the petition of the appellant for a writ of error *coram nobis*. The appellant filed a petition for a re-

hearing of this case on February 15, 1964, and such was granted by order dated March 9, 1964. Thereafter, the State moved this Court, on April 14, 1964, for an order remanding this case to the General Sessions Court for Spartanburg County for the purpose of having that court incorporate into the record a transcript of the several proceedings had in the lower court and for the taking of testimony concerning the allegation of the appellant that he was under the influence of narcotics at the time he entered his guilty plea and that he was inadequately represented by his retained counsel in that they allowed him to plead guilty when they knew that he was in a doped condition. This Court, by order dated April 16, 1964, granted the motion of the State and remanded this case to the General Sessions Court of Spartanburg County so that said court could incorporate into the record the transcripts of the hearings held and generally to do what was necessary to enlighten this Court with respect to the allegations set forth in the petition. A hearing was held before the Honorable Bruce Littlejohn, on June 23, 1964, and the State placed in the record transcripts of all of the previous hearings held in the lower courts and testimony was taken upon the questions of whether the appellant was under the influence of narcotics at the time he entered a plea of guilty to manslaughter and whether or not he was adequately represented by his retained counsel when he entered the aforesaid plea. This case, upon the new record, was argued before this Court at the 1965 March term.

The record shows that the appellant employed two outstanding and experienced lawyers of the Spartanburg Bar to represent him. These attorneys are men of the highest integrity and honesty and we can only add our endorsement to what was said about them by the Honorable James Hugh McFaddin when he was hearing one of the proceedings instituted by the appellant. The statement of Judge McFaddin is hereinbefore quoted.

The appellant now asserts that he was inadequately represented by his retained counsel and that he was induced by them to enter a plea of guilty to manslaughter when he was innocent of such charge. He further charged that his counsel knew that he was in a "doped condition" and under the influence of narcotics, and while in such condition he was induced by them to enter a plea of guilty to the charge of manslaughter.

Here, the appellant was charged with the crime of murder, a capital offense. The effective assistance of counsel in such a case is a necessary requisite of due process of law. In *Crosby v. State,* 241 S. C. 40, 126 S. E. (2d) 843, we said:

"The effective representation by counsel guaranteed by due process of law does not mean perfection on the part of an attorney. 'The quality of the services rendered accused by his counsel meet the requirements of due process when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such character as to preserve the essential integrity of the proceedings as a trial in a court of justice, but he is not required to be infallible, since his client is entitled to a fair trial, not a perfect one.' 16A C. J. S. Constitutional Law § 591b, pages 675-676.

"A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the court and make the proceedings a farce and mockery of justice, and mere allegations of incompetency or inefficency of counsel will not ordinarily suffice as grounds for the issuance of a writ of *habeas corpus. Diggs v. Welch,* 80 U. S. App. D. C. 5, 148 F. (2d) 667, certiorari denied, 325 U. S. 889, 65 S. Ct. 1576, 89 L. Ed. 2002."

We come now to the question of whether the appellant was under the influence of narcotics at the time he entered a plea of guilty to manslaughter. Admittedly, the appellant

had an automobile accident at about 6:00 o'clock A. M. Sunday morning, July 22, 1956, and received bruises over the anterior surface of his chest. He was attended by Dr. J. B. Cash. He gave the appellant one-quarter grain of morphine on July 22, 1956, and one-quarter grain of morphine on Tuesday morning, July 24, 1956. He also gave him some sodium amytal tablets so he could sleep. He did not examine the appellant on Wednesday, July 25, 1956, the day of his trial, and did not know his condition then. It must be remembered that Dr. Cash had, on January 15, 1958, given an affidavit that the appellant was injured in an automobile accident "a few hours before he was tried." The inconsistency of the statement in his affidavit with his present testimony is apparent. This witness also testified that the appellant's allegation in his petition that he had been injected with two one-quarter grain tablets of morphine about three hours before he entered a plea of guilty to manslaughter was erroneous. He also testified that the appellant did not have any broken ribs or internal injuries.

It appears that the General Sessions Court for Spartanburg County convened on July 23, 1956, with the Honorable Bruce Littlejohn presiding and notice was given to him by Dr. J. B. Cash that the appellant was severely injured and could not attend court. Judge Littlejohn appointed Dr. Allen Warren and Dr. George Price, Jr. to go to the home of the appellant and examine him thoroughly for the purpose of determining whether he was able to attend court and stand trial on Wednesday morning, July 25, 1956, and to report such findings to the court. In compliance with such order, these physicians went to the home of the appellant on Monday afternoon, July 23, 1956, and examined him. They reported to the court on July 24, 1956, that they had examined the appellant and found generally that his physical condition was good except he did have a little contusion of the tissues on the left chest wall. It was the opinion of these physicians that the appellant was able to

stand trial on July 25, 1956. When this case was remanded for the taking of further testimony, Dr. Allen Warren testified as is heretofore stated and that appellant's injuries were mild. He testified that he did not find the appellant under the influence of narcotics at the time he examined him. This physician also testified that any effects from the injection of one-quarter grain of morphine and the duration of its effect would be a maximum of six hours.

B. B. Brockman, who was the Sheriff of Spartanburg County, at the time the appellant entered his plea of guilty to manslaughter, stated that he observed the appellant at the time and his behavior was normal. He said that so far as he was able to observe, the appellant was in control of his mental faculties at the time he entered his plea and there was nothing abnormal in his behavior.

J. Wright Nash, the assistant Solicitor, testified that it was the intention of the State to ask for the death penalty against the appellant and he though the evidence which the State had would justify such. He said as a result of negotiations by counsel for the appellant with Solicitor J. Allen Lambright, who is now dead, such culminated in the State agreeing to accept a plea of guilty to the charge of manslaughter. This witness said he was present in court when the appellant entered his plea and that "he knew what he was doing; he was normal in his actions, as any other defendant was in matters of this sort." He said that the appellant appeared to have possession of his normal faculties and his behavior was normal. It was the opinion of this witness that the appellant "got out light when he pleaded guilty."

The retained counsel for the appellant were called as witnesses and testified at the hearing held on June 23, 1964. It appears from their testimony that when court convened on July 23, 1956, they attempted to have the case postponed on account of the injury received by the appellant in an automobile wreck. It was then that the Judge appointed

two doctors to examine the appellant. It appears that the day prior to the trial, July 24, 1956, the attorneys visited the appellant at his home and that he was not then under the influence of any kind of drugs. These attorneys testified that they had fully investigated the case and found it to be a very serious one and could result in the appellant receiving the death penalty. The deceased was shot in the back and the attorneys took the pistol involved, or one similar to it, together with a report as to the range of he bullet and the powder burns on the body, to a physician who advised that it would be impossible for the deceased to have shot herself as contended by the appellant. It was testified that based upon the entire facts of the case the appellant was told "it was a dangerous case" and he was advised as to the various verdicts that might be returned by a jury and the punishment that could be imposed in the event of the various verdicts. These attorneys testified that they did not coerce the appellant or do anything to make him enter a plea of guilty and that he entered a plea of guilty to manslaughter and such was free and voluntary on his part. When asked the question as to whether the appellant was under the influence of narcotics or drugs, the answer was "Absolutely not." It was further testified that prior to the entry of the plea of guilty to manslaughter by the appellant that a long conference had been held between counsel, the appellant and the members of his family, and as a result thereof he was told that the Solicitor had finally agreed to accept a plea of guilty to manslaughter and that "he could get the maximum of thirty years in prison as a sentence." Counsel was asked if the appellant was in full control of his mental faculties and whether the plea of guilty to manslaughter was free and voluntary. The answer was "Absolutely". It was further testified that if counsel had noticed anything that was wrong with the appellant the court would have been advised of it, and as was put by one of these attorneys, "It was my opinion at that time, and it is still my opinion that Tommy Liles knew absolutely

everything that was going on." This counsel was asked the question, "He says he was innocent, he did not want to plead guilty, and that it was forced upon him through fear and misrepresentation, etc." The answer made was "I will tell you and I will tell anyone else, that is absolutely untrue", and "Tommy Liles is one of the luckiest men that ever walked out of this courtroom with the sentence that he got."

The other counsel testified that at the time the appellant entered a plea of guilty to manslaughter that "Tommy Liles was not under the influence of any narcotic or drug at the time he entered this plea." He was not coerced by counsel and he entered the plea freely and voluntarily. This witness also testified that he did not know of anything that could have been done by the attorneys that would have better carried out the cause of the appellant. He further testified that the appellant at the time he entered his plea of guilty to manslaughter was in full possession of his mental and physical faculties and fully capable of understanding what he was saying and what was being said to him. This witness also corroborated the statements made by the first attorney to testify.

The mother of the appellant, in answer to the question of whether he was under the influence of narcotics on the morning of the trial said, "I don't remember". She testified of being present at the conference in the courthouse and that her son was told by his attorneys that if he did not plead guilty "he could get the chair", and in other places in her testimony she said that he was told that "he would get the chair". A sister of the appellant testified that she saw him on the morning of the trial and he didn't act like a normal person and that in her opinion he was under the influence of narcotics. She testified that in the conference in the courthouse her brother was told that he would get the chair if he didn't plead guilty to manslaughter. She said the attorneys told him he would get thirty years for manslaughter. Glenn Liles, a brother of the appellant, testi-

fied that he did not see him on the day of the trial and did not know of his condition. Raymond Liles, also a brother of the appellant, testified that he brought his brother to the courthouse the day of the trial, arriving at about 12:30 P. M. He said his brother took a pill just before they left home. He further said that the appellant was advised by his counsel that "if he didn't plead guilty and get thirty years, he would get the chair".

The appellant testified that he was under "the influence of dope for three days, from the time the wreck happened until I was tried." He said he did not remember going before the Judge and pleading guilty or being sentenced. He admitted that there were many variances, contradictions and discrepancies in his different petitions, and particularly the allegation that "about three hours before your petitioner entered his plea of guilty, your petitioner had been injected with two one-quarter grain tablets of morphine, and had also taken by mouth some other pills". He said that this was an error in his petition. He admitted that if he went to trial there was a possibility of his being convicted of murder and being sentenced to electrocution. He denied shooting his wife and asserted that she died by "her own hand".

The principle function of the writ of *Coram nobis* is to afford the Court an opportunity to correct its own record with reference to a vital fact not known when the judgment was rendered and which could not have been presented by a motion for a new trial, appeal or other existing statutory proceeding. It lies for an error of fact not apparent on the record, not attributable to the appellant's negligence, and which if known by the Court would have prevented rendition of the judgment. It does not lie for newly discovered evidence or newly arising facts or facts adjudicated on the trial. It is not available where advantage could have been taken of the alleged error at the trial, as where the facts complained of were known before or at the trial, or where at the trial the accused or his attorneys knew of the existence of such facts but failed to

present them. *Dobie v. Commonwealth,* 198 Va. 762, 96 S. E. (2d) 747, and the authorities therein cited. A person seeking relief by writ of *coram nobis* has the burden of sustaining the allegations of his petition by a preponderance of evidence. *Shelton v. State,* 239 S. C. 535, 541, 123 S. E. (2d) 867.

The appellant argues in his brief that the principal question for decision in this case is whether he was under the influence of narcotics at the time he entered a plea of guilty to manslaughter. We have studied the entire record in this case and it is our conclusion therefrom that the appellant has failed to prove by the preponderance of the evidence that he was under the influence of narcotics at the time he entered a plea of guilty. We think the only reasonable conclusion from the credible evidence in the record is that the appellant was not under the influence of narcotics at the time he entered a plea of guilty. We conclude further that such plea was freely and voluntarily made after full consultation with his relatives and his counsel. The record before us leaves no doubt that the appellant's plea of guilty of manslaughter was the result of his own choice, made after disclosure to him by his counsel of its nature and its possible result. The record is entirely free of any evidence that the plea of guilty entered by the appellant was induced or in any way influenced by any improper act or advice of counsel. The record shows that his employed counsel made a complete investigation of the evidence that would be produced against the appellant and conscientiously advised him of the possible outcome and suggested that he enter a plea of guilty to manslaughter. It is our conclusion that the appellant was well and adequately represented by able, competent, efficient and honorable members of the Bar and all of his rights were fully protected. The attorneys for the appellant were confronted with a difficult situation and there is nothing in the record before us which indicates that they acted otherwise than in good faith, or that they were not actuated by a desire to do what they believed to be for the best interest of their client.

The appellant also asserts that he entered a plea of guilty to manslaughter because he believed that was the only way he could save his life. In *Babb v. State,* 240 S. C. 235, 125 S. E. (2d) 467, we held that the fear of a lengthy sentence induced through knowledge of the severity of punishment of the crime committed provided no basis for relief under *habeas corpus.* In *Brown v. Smyth,* 4 Cir., 271 F. (2d) 227, the petitioner alleged that he was "coerced" into pleading guilty by his court appointed counsel who advised him that "the plea of not guilty meant only death in the electric chair". In disposing of the contention that such statements by the attorney amounted to coercion, the Court said: "Certainly the mere allegation that a lawyer suggested to a defendant that if he stood trial he was in jeopardy of a death sentence does not constitute such coercion as to make the plea of guilty an involuntary act." *Crosby v. State,* 241 S. C. 40, 126 S. E. (2d) 843. In the case of *Tillman v. State,* 244 S. C. 259, 136 S. E. (2d) 300, we said: "With respect to the threat of the electric chair, it is not only the right but the duty of an attorney, whether retained or appointed in a capital case to discuss and consider with the defendant the possibility of a death sentence following a trial before a jury." We think that the rule announced in these cases is applicable where a petition is filed for a writ of *coram nobis,* particularly where there is no doubt that the plea of guilty was the result of the appellant's own choice made after full disclosure to him by counsel of the possible result of standing trial.

The appellant alleges that he is entitled to a writ of *coram nobis* because he is not guilty of the crime to which he entered a plea of guilty. *Coram nobis* does not have the function of a writ of error to the original judgment so as to bring that judgment under review. *Dobie v. Commonwealth,* 198 Va. 762, 96 S. E. (2d) 747. It has also been held that appellant is not entitled, in a *coram nobis* proceeding, to retry the factual issues relating to his

guilt or innocence. *Hawk v. State,* 151 Neb. 717, 39 N. W. (2d) 561; *Doyon v. State,* 158 Me. 190, 181 A. (2d) 586. We have held that the question of the sufficiency or insufficiency of the evidence to support the verdict cannot be raised in a *habeas corpus* proceeding. *Medlock v. Spearman,* 185 S. C. 296, 194 S. E. 21; *Wyatt v. State,* 243 S. C. 197, 133 S. E. (2d) 120. In *Gary v. State,* 241 S. C. 266, 127 S. E. (2d) 888, this Court held that a simple allegation of innocence does not set forth a *prima facie* case.

It is our conclusion that the appellant's petition for a writ of *coram nobis* was properly dismissed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.