**Marion PYLES, Petitioner,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. 1581-W.**

United States District Court
N. D. West Virginia.

Feb. 11, 1966.

John D. Phillips, Jr., Arthur M. Recht, Wheeling, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, Charleston, W. Va., for respondent.

MAXWELL, Chief Judge.

Marion T. Pyles is now in the custody of the Respondent, serving a sixty year sentence for kidnapping, imposed on June 5, 1961, by the Circuit Court of Monongalia County, West Virginia.

On November 5, 1965, Pyles petitioned this Court for Federal habeas corpus, basing his claim on four factual allegations. The petition was ordered dismissed on January 12, 1966, for the reasons stated in a written memorandum filed in the case of Miller v. Boles, 248 F.Supp. 49 (N.D.W.Va.1965).

Pyles has now submitted to this Court an application for certificate of probable cause, expressing his intention to appeal the order of dismissal. Since Pyles reiterates that he had properly exhausted his state remedies, as to the issues which he raised in his petition for Federal habeas corpus, and since Pyles has also submitted to this Court a "motion to rehear," dated January 18, 1966, it appears proper to treat his present application as a simultaneous petition to reconsider the earlier proceedings

in this Court. Accordingly, the Court has reexamined the record.

■ As a result, this Court notes that in 1962, Pyles unsuccessfully petitioned the West Virginia Supreme Court of Appeals for a writ of error corum nobis.[1] His petition was treated as a writ for state habeas corpus relief by the Supreme Court and was denied without a hearing.[2] His principal argu-

1. In this Court's mind, two problems were thereby raised. "Error coram *nobis*" has been defined in Black, Law Dictionary (4th ed. 1951) as follows:

Error committed in the proceedings "before us;" i. e., error assigned as a ground for reviewing, modifying, or vacating a judgment in the same court in which it was rendered.

Essentially the same definition is given in 49 C.J.S. Judgments § 311 (1947). On the other hand, "Error coram *vobis*" has been defined in Black, Law Dictionary (4th ed.) in the following manner:

Error in the proceedings "before you;" words used in a writ of error directed by a court of review to the court which tried the case.

In other words, it is apparent that what the Petitioner technically should have asked for in his 1962 petition was a writ of error coram *vobis* and not coram *nobis*. The first problem which this Court considers, therefore, is whether this procedural mistake in the state forum prevented Pyles from exhausting his state remedies on the issues later raised in his Federal habeas corpus petition, a subject which is more fully discussed in footnote two. But since it is this Court's understanding that the distinction between the two writs is no longer properly observed in legal circles, Dobie v. Commonwealth, 198 Va. 762, 96 S.E. 2d 747, 752 (1957), and since the petion was drafted by a layman, there obviously would be no justification in penalizing Pyles for his procedural misnomer. The second problem which this Court considers is whether the writ of error coram vobis is still recognized in the State of West Virginia. But since the only difference between coram nobis and coram vobis stems from the forum in which they are brought, and since this Court has recently concluded in footnote 46 of its *Miller* decision that the writ of error coram nobis still exists in West Virginia in criminal matters, there is no reason for concluding that coram vobis in a similar situation in this State would not exist.

2. Here, two additional matters should be considered. In the first place, it seems only logical for the West Virginia Supreme Court of Appeals to have treated Pyles' 1962 petition for error coram nobis as a petition for state habeas corpus because it may well be that the contentions which Pyles raised in that petition, see footnote three, infra, are not the proper grounds for a writ of error coram nobis. In 49 C.J.S. Judgments § 312(c) (1) (1947), the following is said:

A writ of error coram nobis lies * * * for an error of *fact* (emphasis added), not appearing on the record, which fact was unknown to the court, and which, if known in season, would have prevented the rendition and entry of the judgment challenged.

Other such appropriate grounds recited in 49 C.J.S. Judgments are *jurisdictional facts* in section 312(c) (2), *disability or death of a party* in section 312(c) (3), and *fraud, mistake or clerical errors* in 312(c) (4). (Of course, whatever grounds are or are not appropriate for coram nobis, correspondingly would or would not be appropriate for coram vobis, Dobie v. Commonwealth, supra.) However, none of these grounds seem to fit the contentions which Pyles raised in his 1962 petition. As recited in footnote 3, infra, many of these contentions which Pyles raised touched either upon the alleged prejudice of the state trial judge and reversible errors committed by him during the proceedings, or upon the alleged ineffectiveness of his counsel. After reviewing the above cited authorities, and after examining the other authorities well set out in the *Dobie* opinion, however, this Court is not able to conclude that the above alleged actions of a trial judge are grounds for coram nobis. Neither is this Court able to conclude that ineffective representation of counsel is a proper ground, although the *Dobie* case does suggest that here there is some room for doubt. Cf., Withrow v. Smithson, 37 W.Va. 757, 17 S.E. 316, 19 L.R.A. 762 (1893). Moreover, this Court notes that since the writs of error coram nobis and coram vobis are ancient common law writs, historically they could not have encompassed ineffective representation of counsel, which is a comparatively recent development in the law. To repeat, therefore, Pyles' 1962 petition for error coram nobis may not have been properly grounded. Hence, the West Virginia State Supreme Court of Appeals was justified in treating it as a petition for state habeas corpus, a more suited

ment in his state "writ of error coram nobis" petition boils down to alleging that he had been denied due process of law because of the manner in which his state trial was conducted.[3]

Next, on April 1, 1963, the Petitioner successfully instituted a state habeas corpus proceeding in the Circuit Court of Marshall County, West Virginia. The basis for this habeas corpus relief was that the original indictment charging Pyles with kidnapping had been void and that the Monongalia County Circuit Court had been without jurisdiction to try Pyles. The Marshall County Circuit Court's ruling was thereafter appealed and remanded by the West Virginia Supreme Court of Appeals. In so doing, the Supreme Court overruled Pyles' contentions as to the void indictment and jurisdiction, with directions that the writ of habeas corpus theretofore issued by the Marshall County Circuit Court be discharged and that Pyles be placed in the custody of the Respondent. Pyles v. Boles, 148 W.Va. 465, 135 S.E.2d 692 (1964).

remedy for Petitioner, as determined from his application to that court.

The second matter which this Court now considers is that if the grounds for the above discussed writs were properly laid, and since coram nobis and coram vobis are in the nature of direct appeals, then as to that factual issue which Pyles raised in his 1962 petition and which he repeated in his later petition for Federal habeas corpus, i. e., ineffective representation of counsel, footnote three, infra, there might be some room for arguing that he has properly exhausted his state remedies. But this argument is rejected for two reasons. The first is discussed more fully in footnote five infra. The second is one to which this Court has previously referred. Since coram nobis and coram vobis are in the nature of direct appeals, the question of ineffective representation of counsel might have been exhausted in the state courts, by virtue of the 1962 petition, if the issue had *not* been a factual one. Whether or not counsel was competent, moreover, is a question which cannot be answered from the record. In short, before either a state or federal court can pass on the issue, as a matter of Federal constitutional deprivation, an evidentiary hearing is needed. But the West Virginia Supreme Court of Appeals, to which the 1962 petition was directed, is not set up as an evidentiary body. For the reasons assigned in its *Miller* decision, therefore, this Court must conclude that the 1962 petition for writ of error coram nobis did not exhaust state remedies.

3. The contentions raised in the 1962 application are as follows: (1) he was convicted in the face of direct evidence that there was no "intent" to kidnap; (2) he was denied due process of law because of the trial judge's prejudice and animosity; (3) no witnesses were allowed to appear in his behalf; (4) the sentence of the court constituted "cruel and unusual punishment"; (5) the court ruled contrary to the findings of medical experts; (6) the trial judge erred by not disqualifying himself, as stated in item 2; (7) the court appointed counsel did not effectively represent the petitioner; (8) the court erred by disregarding motions to quash the indictment; (9) the court erred by not giving instructions for a directed verdict; (10) the firearm with which the petitioner perpetrated the kidnapping was not a dangerous weapon as charged in the indictment; (11) the defendant was unable to present his side of the case since the court sustained all major objections by the State; (12) the court did not properly instruct the jury because no presumptions of innocence were given in his instructions, and the court refused to read all the defense's instructions, whereas it did read all those presented by the State; (13) the court erred by dismissing the jury for nearly two hours for lunch and leaving them to their own devices; (14) the judge spoke so rapidly that it was impossible for the jury to understand his instructions, neither did the judge provide the jury with written instruction; (15) the court erred in that it did not properly instruct the jury as to the defendant's rights; (16) the court erred by allowing the State to instruct the jury, and the defense counsel failed to move for a mistrial; (17) the final arguments of the prosecuting attorney were not based upon the testimony and evidence submitted during the trial, and again, as in the next two contentions, the defense counsel failed to move for a mistrial; (18) the trial judge showed his prejudice when he accused the petitioner of being crazy; and (19) by allowing the state to introduce irrelevant and immaterial questions which were prejudicial to the rights of the defendant, the court proved that the trial was nothing but a travesty of justice.

In his recently dismissed Federal habeas corpus petition, Pyles contended the following: (1) he was denied effective representation of counsel in his state trial, (2) he was denied the right to the assistance of counsel in his 1962 post conviction review petition to the West Virginia Supreme Court of Appeals, (3) he was denied a transcript of the state trial proceedings when he sought to perfect the 1962 post conviction review, and (4) he was denied due process of law under the Fourteenth Amendment upon the indictment charging kidnapping, since he committed the kidnapping while insane.

To the extent which the Petitioner's contentions raised Federal habeas corpus issues, it was, and still remains, apparent that they also raised questions necessitating factual determinations. The Petitioner, however, neither alleged nor suggested in his Federal habeas corpus petition that he had sought state court resolutions of these four factual questions in the manner outlined by this Court recently in Miller v. Boles, supra. Neither does he do so now.[4] Furthermore, this Court notes that no issue raised in the 1963 habeas corpus proceedings, and only one issue raised in the 1962 petition for a writ of error coram nobis (ineffective representation of counsel, supra, footnote two), were suggested in his Federal petition. Conversely, only one of the four factual issues present in his recently dismissed Federal

petition was raised in the 1962 or 1963 proceedings.[5] Therefore, it remains the conclusion of this Court that Pyles' contentions for Federal habeas corpus relief are premature.[6]

In accord with the Petitioner's request, however, an appropriate order will be entered, granting the Petitioner's application for certificate of probable cause.

An order also shall be entered allowing the Petitioner to proceed on appeal in forma pauperis.

---

4. In footnotes 22 through 36 of its *Miller* decision, this Court dealt with the Federal policy favoring state court determination of the relevant facts in cases involving constitutional claims by state prisoners.

5. In Sokol, Federal Habeas Corpus, p. 124 (1965), the following is said:

   If the petitioner raises only two issues in the state courts but getting into a federal court conjures up a third, the federal court is entirely justified in dismissing the petition for failure to exhaust state remedies. The state courts have not been given first crack at the issue. That, after all, is the rationale underlying the whole doctrine.

6. This Court also notes an inconsistency in the Petitioner's recent attempt for Federal habeas corpus. In his 1962 petition to the West Virginia Supreme Court of Appeals for a writ of error coram nobis, Pyles raised at least one factual issue, which he later was to repeat in his Federal petition, namely, the question of ineffective assistance of counsel. In 1963, however, the record, as is indicated above, shows that on a different contention, not included in his Federal petition, Pyles applied for a writ of state habeas corpus in the proper trial court where a full evidentiary hearing could be held. Consequently, this Court must conclude that the Petitioner is aware that West Virginia does provide an effective forum in which to raise factual as well as legal post conviction issues.